# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN FIFE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MPHASE TECHNOLOGIES, INC, a New Jersey corporation, <br><br> Defendant. | Case No.: 1:12–CV–09647 <br><br> Judge: Honorable Amy J. St. Eve <br><br> Magistrate: Daniel G. Martin |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT
OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff John Fife ("Fife"), through undersigned counsel, and pursuant to L.R. 56.1(a)(3) of the Local Rules of the United States District Court for the Northern District of Illinois, submits the following statement of undisputed material facts that entitle Fife to judgment as a matter of law:

**The Parties, Jurisdiction, and Venue**

1. Fife is an individual, a citizen of Illinois, and resides in Cook County, Illinois. (John Fife's Declaration ("Fife Dec.") ¶ 1, attached as Exhibit 1.)

2. Defendant mPhase Technologies, Inc. ("mPhase") is a New Jersey corporation with its principal place of business in Norwalk, Connecticut. (Answer ¶ 2, Docket No. 16.)

3. The amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs. (Complaint ¶ 3, Docket No. 1)

4. mPhase consented and agreed to the jurisdiction and venue of this Court in a written agreement, which agreement states that mPhase "consents to the exclusive personal jurisdiction of the federal courts whose districts encompass any part of Cook County . . . in connection with any dispute arising under this Agreement, and hereby waives, to the maximum extent permitted by law, including any objection based on *forum non conveniens*, to the bringing of any such proceeding in such jurisdiction or to any claim that such venue of the suit, action or proceeding is improper." (Answer ¶ 6, Docket No. 16; Fife Dec. (Ex. 1) ¶ 2.)

### The Parties' Agreements

5. Pursuant to a Securities Purchase Agreement, St George paid $500,000.00 to mPhase in exchange for a Convertible Note (the "Note") issued and signed by mPhase in the principal amount of up to $557,500.00. (Fife Dec. (Ex. 1) ¶ 3; A copy of the Securities Purchase Agreement and the Note are attached hereto as Exhibits 2 and 3, respectively.)

6. The Note states, among other things, as follows:

> 1. PAYMENTS OF PRINCIPAL; PREPAYMENT. On each Installment Date (which includes the Maturity Date), the Company [mPhase] shall pay to the Holder [Fife] an amount equal to the Installment Amount due on such Installment Date in accordance with Section 8.
> . . .
>
> 3. CONVERSION OF NOTE. This Note shall be convertible into validly issued, fully paid and non-assessable shares of Common Stock, on the terms and conditions set forth in this Section 3.
>
>   (a) Conversion Right.

(i) . . . at any time or times on or after the Issuance Date, the Holder shall be entitled to convert any portion of the outstanding and unpaid Conversion Amount (as defined below) into validly issued, fully paid and non-assessable shares of Common Stock in accordance with Section 3(c), at the Conversion Rate (as defined below).
. . .
(b) Conversion Rate. The number of shares of Common Stock issuable upon conversion of any Conversion Amount pursuant to Section 3(a)(i) shall be determined by dividing (x) such Conversion Amount by (y) the Conversion Price (the "**Conversion Rate**").

(i) "**Conversion Amount**" means the portion of the Outstanding Balance to be converted, redeemed or otherwise with respect to which this determination is being made.

(ii) "**Conversion Price**" means, as of any Conversion Date or other date of determination, $0.01, subject to adjustment as provided herein.

(c) Mechanics of Conversion.

(i) Conversion Prior to Maturity Date. To convert any Conversion Amount into shares of Common Stock on any date (a "**Conversion Date**"), the Holder shall deliver (whether via email, facsimile or otherwise), for receipt on or prior to 11:59 p.m., New York time, on such date, a copy of an executed notice of conversion in the form attached hereto as Exhibit A (the "**Conversion Notice**") to the Company.
. . .

4. RIGHTS UPON EVENT OF DEFAULT.
. . .
(b) Notice of an Event of Default; Redemption Right. . . . At any time after the earlier of the Holder's receipt of an Event of Default Notice and the Holder becoming aware of an Event of Default, the Holder may require the Company to redeem (regardless of whether such Event of Default has been cured) all or any portion of this Note by delivering written notice thereof (the

"**Event of Default Redemption Notice**") to the Company, which Event of Default Redemption Notice shall indicate the portion of this Note the Holder is electing to redeem.
. . .

8. COMPANY INSTALLMENT CONVERSION OR REDEMPTION. Beginning on the earlier of (i) the date that is thirty (30) days following the date of an effective Registration Statement filed by the Company, and (ii) November 30, 2011 (the "**Initial Installment Date**"), and on each applicable Installment Date thereafter, the Company shall pay to the Holder of this Note the applicable Installment Amount due on such date by converting such Installment Amount in accordance with this Section 8 (a "**Company Conversion**"); provided, however, the Company may, at its option as described below, pay all or any part of such Installment Amount by redeeming such Installment Amount in cash (a "**Company Redemption**") or by any combination of a Company Conversion and a Company Redemption so long as the entire amount of such Installment Amount due shall be converted and/or redeemed by the Company on the applicable Installment Date,
. . .

29. CERTAIN DEFINITIONS. For purposes of this Note, the following terms shall have the following meanings:
. . .
(v) "**Installment Amount**" means (i) $57,500, plus, (ii) the sum of any accrued and unpaid Interest as of the applicable Installment Date under this Note and accrued and unpaid Late Charges, if any, under this Note as of such Installment Date, and any other amounts accruing or owing to Holder under this Note as of such Installment Date.
. . .
(w) "**Installment Date**" means the Initial Installment Date and the last day of each of the next nine (9) months following the month during which the Initial Installment Date occurs.
. . .
(y) "**Maturity Date**" shall mean August 31, 2012;
. . .

(Ex. 3 ¶¶ 1, 3-4, 8, 29.)

4

7.      On October 17, 2011, St George and Fife entered into an Assignment of Convertible Note (the "Assignment") pursuant to which St George assigned the Note, among other rights and agreements, to Fife.  (Fife Dec. (Ex. 1) ¶ 5; A copy of the Assignment of Convertible Note is attached hereto as Exhibit 4; *See* Answer ¶ 8, Docket No. 16.)

8.      The Assignment was approved and agreed to by mPhase.  (Fife Dec. (Ex. 1) ¶ 6; Ex. 4, at 3; Answer ¶ 9, Docket No. 16.)

9.      On May 31, 2012, Fife and mPhase entered into a Standstill and Restructuring Agreement (the "Standstill Agreement").  (Fife Dec. (Ex. 1) ¶ 7; Answer ¶ 10, Docket No. 16; A copy of the Standstill Agreement is attached hereto as Exhibit 5.)

10.     The Standstill Agreement states, in relevant part:

> . . .
>
> 2.      <u>Standstill and Restructure</u>.  Subject to the terms, conditions and understandings contained in this [Standstill] Agreement, and provided Borrower [mPhase] is not in default of any provision hereunder or under the Note, Lender [Fife] agrees that he will not seek to convert any portion of the Outstanding Balance of the Note, and that he will not sell any shares of Borrower's Common Stock during the Standstill Period (the "**Standstill**"). . . . Lender's Standstill obligations shall immediately and automatically terminate upon Borrower's failure to make any Note Payment when due or upon Borrower's breach of any other term or provision of this Agreement or the Note.
>     . . .
>
> 4.      <u>Note Payments</u>.  Borrower shall make the following payment to Lender [Fife] (each, a "***Note Payment***"), which Note Payments shall be made in the form of cash.

> (a) Borrower agrees to pay the Lender monthly payments in the amount of $33,238.12 on the 1st day of each calendar month, commencing on October 1, 2012, and continuing thereafter until September 1, 2014
>
> . . .
>
> 6. <u>Failure to Comply</u>. Borrower understands that the Standstill shall terminate immediately upon the occurrence of any material breach of this Agreement and that upon such breach of any material term or provision in this Agreement, Lender may seek all recourse and remedies available to it under the terms of the Note, the other Loan documents, or applicable law. Moreover, in such event Lender shall retain all rights and remedies under the Note as if this Agreement was never entered into and any modifications to the terms or provisions of the Note herein shall be deemed null and void.
>
> 7. <u>Ratification of Note</u>. The Note shall be and remain in full force and effect (subject to the amendments set forth herein) in accordance with its terms and is hereby ratified and confirmed in all respects. Borrower acknowledges that it is unconditionally obligated to pay the Outstanding Balance of the Note pursuant to its terms (as modified by this Agreement) and represents that such obligation is not subject to any defenses, rights of offset, or counterclaims. The Outstanding Balance of the Note upon execution of this Agreement, including the Standstill Effect, shall be deemed and affirmed to be $777,769.08 (provided that in the event Lender discovers that any Event of Default under the Note has previously occurred, this balance shall be subject to adjustment pursuant to the terms of the Note). No forbearance or waiver other than as expressly set forth herein may be implied by this Agreement. Except as expressly set forth herein, the execution, delivery, and performance of this Agreement shall not operate as a waiver of, or as an amendment to, any right, power, or remedy of Lender under the Note, as in effect prior to the date hereof.

(Ex. 5 ¶¶ 2, 4, 6-7.)

**Mphase's Breach of the Standstill Agreement and Note**

11. Since entering into the Standstill Agreement, mPhase has not made any payments to Fife. (Fife Dec. (Ex. 1) ¶ 9; Defendant's Response to Plaintiff's Requests for Admission ("Resp. Req. Adm.") No. 1, attached hereto as Exhibit 6.)

12. On October 24, 2012, following mPhase's failure to make the October Note Payment required by the Standstill Agreement, Fife delivered to mPhase a Conversion Notice whereby Fife elected to convert a portion of the Note's balance into 62,500,000 shares of mPhase's common stock (the "Conversion Shares"). (Fife Dec. (Ex. 1) ¶ 10, a copy of the Conversion Notice is attached hereto as Exhibit 7.)

13. To date, mPhase has not delivered the Conversion Shares to Fife. (Fife Dec. (Ex. 1) ¶ 11; Resp. Req. Adm. (Ex. 6) No. 2.)

14. On November 16, 2012, Fife sent a redemption notice to mPhase whereby Fife elected to redeem the full outstanding balance of the Note. (Fife Dec. (Ex. 1) ¶ 12, a copy of the redemption notice is attached hereto as Exhibit 8.)

15. To date, mPhase has failed and/or refused to make any payments on the Note in accordance with the November 16, 2012, redemption notice. (Fife Dec. (Ex. 1) ¶ 13.)

Respectfully submitted,

JOHN FIFE

/s/
By: Jeremy C. Reutzel, one of his Attorneys

Jeremy C. Reutzel (pro hac vice)
Bennett Tueller Johnson & Deere
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121-5027
Telephone: (801) 438-2000
Email: jreutzel@btjd.com

Scott L. Warner (06231380)
Peter G. Land (06229659)
Neil S. Goldsmith (06303399)
Franczek Radelet P.C.
300 S. Wacker Dr., Suite 3400
Chicago, Illinois 60606
Telephone: (312) 986-0300
Email: slw@franczek.com

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that he served the foregoing on the following attorney of record via the Court's CM/ECF system on this 25th day of July, 2013:

Alan W. Nicgorski
Michael S. Shapiro
SCANDAGLIA & RYAN
55 E. Monroe St., Suite 3440
Chicago, IL 60603

By:     /s/Jeremy C. Reutzel