**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN FIFE, an individual, | Case No.: 1:12–CV–09647 |
| Plaintiff, | Judge: Honorable Amy J. St. Eve |
| v. | |
| MPHASE TECHNOLOGIES, INC, a New Jersey corporation, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY AND**
**OPINIONS OF MICHAEL PARISH AND TO STRIKE EXPERT REPORT**

# Table of Contents

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 5

**I.     MR. PARISH IS NOT QUALIFIED TO OFFER HIS PROPOSED OPINIONS IN THIS CASE.** ......................................................................................................... 5

**II.     THE SUBJECT MATTER ON WHICH MR. PARISH OFFERS OPINIONS IS UNHELPFUL, UNDULY PREJUDICIAL, AND IMPROPER.** ............................................. 8

   **A.     Mr. Parish's opinions regarding federal securities laws are unhelpful and are not relevant.** .......................................................................................................... 8

   **B.     Mr. Parish's Opinions 1-5 and 9-11 constitute inappropriate legal conclusions.** .... 10

   **C.     Allowing Mr. Parish to present testimony concerning securities law and Rule 10b-5 would be unduly prejudicial.** .......................................................................... 13

   **D.     Rule 702 does not permit Mr. Parish to Offer Opinions as to the DTCC's or mPhase's state of mind.** ...................................................................................... 13

**III.     MR. PARISH'S OPINIONS ARE NOT RELIABLE AND SHOULD BE EXCLUDED.** ............................................................................................................. 15

**IV.     THE EXPERT REPORT IS NOT RELIABLE BECAUSE MR. PARISH HAS A DIRECT, PECUNIARY INTEREST IN THE OUTCOME OF THIS CASE** ...................... 18

CONCLUSION ....................................................................................................... 19

<u>**Table of Authorities**</u>

## Cases

*ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805, 831 (N.D. Ill. 2010) .................... 10

*Boleman Law Firm, P.C. v. United States Trustee*, 355 B.R. 548, 552 (E.D. Va. 2006) .............. 7

*Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) ................................................... 17

*Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) .............. 7

*Carroll v. Otis Elevator Company*, 896 F.2d 210, 212 (7th Cir. 1990) ......................................... 6

*Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999) .......................................... 17

*Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011) .......................................... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).......................................... 5

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)............................ 18

*EEOC v. Dial Corp.*, No. 99 C 3356, 2002 WL 31061088, 2002 U.S. Dist. LEXIS 17543, at
   *30–31 (N.D. Ill. Sep. 17, 2002)........................................................................ 20

*Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000) .......................................... 19

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).......................................... 5

*Giger v. Ahmann*, No. 09 C 4060, 2013 WL 6730108, 2013 U.S. Dist. LEXIS 178717, at *29-30
   (N.D. Ill. Dec. 20, 2013) .............................................................................. 10

*Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)................................................... 9

*Harbour Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990) ............................... 14

*Harris Trust & Savings Bank v. Salomon Brothers, Inc.*, No. 92 C 5883, 1996 U.S. Dist. LEXIS
   8485, at * 49-50 (N.D. Ill. June 18, 1996)........................................................ 13

*Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 950 (N.D. Ill. 2010)...................... 15

*Indiana ex rel. Naylor v. Indiana State Teacher's Ass'n.* 950 F. Supp. 2d 993, 1002 (S.D. Ind.
   2013)...................................................................................................... 12

*Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999)................................................... 14

*Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) .......................................... 5

*Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 508 (2d Cir. 1977) .......................................... 11

*McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1120 (D. Or. 2010)...................................... 20

*MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096, 2009 WL 1916728, 2009 U.S. Dist. LEXIS 55652, at *13–16 (S.D. Ind. June 29, 2009).................................. 17

*Miller v. Am. Nat'l Bank and Trust Co.* No. 88 C 10909, 1992 WL 168813, 1992 U.S. Dist. LEXIS 10063, at *11 (N.D. Ill. July 13, 1992)......................... 12

*Quinones-Pacheco v. Am. Airlines, Inc.*, 979 F.2d 1, 6 (1st Cir. 1992) ...................................... 19

*RLJCS Enters. v. Prof'l Benefit Trust, Inc.*, No. 03 C 6080, 2005 WL 3019398, 2005 U.S. Dist. LEXIS 27250, at *13 (N.D. Ill. Nov. 8, 2005) ......................... 11

*United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2007) ...................................... 12

*United States v. Cohen*, No. 08-3282, 2012 WL 289769, 2012 U.S. Dist. LEXIS 11627, at *7-8 (C.D. Ill. Jan. 31, 2012) ........................... 13

*United States v. Cross,* 113 F. Supp. 2d 1282, 1285 (S.D. Ind. 2000) ...................................... 13

*United States v. Lupto*n, 620 F.3d 790, 799 (7th Cir. 2010)........................................... 7

*United States v. Lupton*, No. 07-CR-219, 2008 WL 22243999, 2008 U.S. Dist. LEXIS 41989, at *5 (E.D. Wis. May 28, 2008).......................... 6

*Vollmert v. Wis. Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999) ...................................... 17

*Wallace Computer Servs. v. David A. Noyes & Co.*, No. 93 C 6005, 1995 WL 561112, 1995 U.S. Dist. LEXIS 13629, at *14-15 (N.D. Ill. Sept. 15, 1995) ...................................... 10

**Statutes**

Fed. R. Evid. 702 ................................................................................................................. 8

Rule 3.4(b) of the Illinois Rules of Professional Conduct ........................................................ 18

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOHN FIFE, an individual, | Case No.: 1:12–CV–09647 |
| Plaintiff, | Judge: Honorable Amy J. St. Eve |
| v. | |
| MPHASE TECHNOLOGIES, INC, a New Jersey corporation, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF MICHAEL PARISH AND TO STRIKE EXPERT REPORT**

Plaintiff John Fife ("***Fife***"), through his attorneys of record, and pursuant to Rule 7 of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence, submits the following Memorandum in Support of his Motion to Exclude Testimony and Opinions of Michael Parish and to Strike Expert Report (the "***Motion***").

## <u>INTRODUCTION</u>

On February 14, 2014, Defendant mPhase Technologies, Inc. ("***mPhase***") was to provide an expert designation—including its expert's report. Instead, mPhase provided only the name of its expert, Michael Cusick, and moved for an extension of time to file Mr. Cusick's expert report. After receiving an extension of time to file Mr. Cusick's report, over Fife's objection, mPhase provided an expert report (the "***Expert Report***") but from an expert different from the one designated. The Expert Report was from Michael Parish ("***Mr. Parish***"), not Michael Cusick. Setting aside, for purposes of this motion, mPhase's improper and untimely designation of a new

expert, and given the Court's extension of time to file the Expert Report, Fife would ordinarily accede that an appropriate expert report is "better late than never" and move forward. The Expert Report, however, is far from appropriate. It is from an unqualified expert, and it addresses irrelevant subject matters.

Indeed, in place of an appropriate expert report containing, for example, testimony regarding the calculation of Plaintiff's damages supported by a specified, industry-accepted methodology, the Expert Report consists of 12 opinions—mostly legal conclusions—including conclusions that Plaintiff "acquired a 'Security' governed by the Securities Act of 1933" and that "Defendant can establish . . . a violation of Rule 10b-5." After stating these unfounded conclusions, the Expert Report continues with seven pages of Mr. Parish's legal arguments supporting his conclusions.

As for Mr. Parish, he is a retired lawyer, current chairman of the board for Forum Funds, and he is being paid for his expert services in mPhase stock. With this background, mPhase suggests that Mr. Parish is qualified to offer opinions on everything from damages purportedly incurred by mPhase, to the law governing this case and its application to the facts. Parish's opinions go so far as to address the state of mind of mPhase and the Depository Trust & Clearing Corporation (the "*DTCC*").

The fact is that Mr. Parish is not qualified as an expert witness on any subject matter relevant to the issues in this case. His report and opinions should be stricken because they do not comport with the standards laid out in the Federal Rules of Evidence and related legal precedents. As set forth in more detail below, Mr. Parish's barebones CV, attached as the last page of his report, provides no bases for establishing him as a qualified expert on any matter at issue in this case. Moreover, even assuming that Mr. Parish was qualified, his opinions are

2

subject to exclusion as being irrelevant, conclusory, speculative, unduly prejudicial, improper

under the governing Federal Rules of Evidence, and utterly unsupported by reliable facts, data,

or analysis.  Finally, and incredibly, Mr. Parish's opinions are wholly unreliable given that his

expert fee has been and will be paid with mPhase stock, providing Mr. Parish with a direct and

improper pecuniary interest in this case, and tying his compensation to the outcome of this case.

Accordingly, Fife requests that this Court exclude Mr. Parish's testimony and opinions

and strike the Expert Report.

## BACKGROUND

1.      On December 4, 2012, Fife filed a complaint (the "***Complaint***") arising out of

mPhase's failure to pay amounts owing under a convertible promissory note (the "***Note***").

2.      In the Complaint, Fife asserted three causes of action: (a) Breach of Contract; (b)

Quasi Contract, Unjust Enrichment, and/or Quantum Meruit; and (c) Specific Performance.

3.      On February 27, 2013, mPhase filed its answer and counterclaim (the "***Answer***")

denying any liability under the convertible promissory note and asserting two counterclaims: (a)

Breach of Contract and (b) Fraud in the Inducement and Fraud.

4.      Following a year of discovery, on March 3, 2014, mPhase filed the Expert Report

prepared by its new expert Mr. Parish.  A copy of the Expert Report is attached hereto as Exhibit

A.

5.      In the Expert Report, Mr. Parish offers the following twelve opinions:

a.  **Opinion #1:** "Plaintiff in purchasing the Convertible Note issued September
    13, 2011 acquired a 'Security' governed by the Securities Act of 1933, as
    amended, and the Securities and Exchange Act of 1934, as amended,
    including the Rules and Regulations there under."

b.  **Opinion #2:** "Plaintiff's Consent Decree is a material item of information to
    Defendant in making an evaluation of whether to sell the Convertible Note to
    Plaintiff."

c.  **Opinion #3:** "The Securities and Exchange Commission requires both a Purchaser and Seller of a Security to disclose material information to each other in connection with any transaction involving the purchase and sale of a security."

d.  **Opinion #4:** "Defendant, as an issuer of a Security, is a 'seller' in direct privity of contract with Plaintiff as 'purchaser' for purposes of having a private right of action or affirmative defense under Rule 10b-5 to its obligations under the Operative Documents."

e.  **Opinion #5:** "Defendant did not have 'constructive notice' of the Consent Decree as a result of the SEC public records since the SEC imposes a continuing duty of disclosure upon Plaintiff with respect to material information, including the Consent Decree. Further, depositions of Mr. Smiley indicate that Plaintiff attempted to satisfy this requirement, but was ineffective in doing so inasmuch as he referred Defendant to his website, which contained no mention of the Consent Decree. Further, Plaintiff attempted to dissuade Defendant in doing business with another investor, alleging that this investor would bring lawsuits of precisely the type Plaintiff himself proceeded to bring after his deposits of large numbers of unregistered common stock which precipitated the DTCC Chill."

f.  **Opinion #6:** "Plaintiff's Consent Decree was known to the DTCC and could, subject to further investigation, have been a significant factor or ingredient in causing the DTCC to impose a "chill" on Defendant's common stock."

g.  **Opinion #7:** "The DTCC Chill of the Defendant's common stock negatively impacted the ability of Defendant to obtain continued financing since very few brokers and clearing firms will accept deposits of newly issued common stock while a DTCC Chill is in effect."

h.  **Opinion #8:** "The 'chill' of Defendant's common stock by the DTCC increased Defendant's cost of financing through the sale of future Convertible Securities in Private Placements, thereby damaging Defendant."

i.  **Opinion #9:** "Subject to the caveat set forth in item 6 above, Defendant can establish, by the preponderance of the evidence, a violation of Rule 10b-5 of the Securities Exchange Act of 1934, as amended."

j.  **Opinion #10:** "The Violation of Rule 10b-5 by Plaintiff renders the contract to purchase the Convertible Note issued September 11, 2013 "void" pursuant to Section 29(b) of the Securities Exchange Act of 1934, as amended."

k.  **Opinion #11:** "A second violation of Rule 10b-5 by Plaintiff would constitute a violation of Plaintiff's obligations under the Consent Decree."

l.  **Opinion #12:** "In April of 2012 Plaintiff sold common stock of Defendant under a Prospectus that failed to disclose Plaintiff's Consent Decree."

(Expert Report, at 5-7.)

6.      According to the Expert Report, Mr. Parish is being paid a flat fee of $1,000 plus $5,000 worth of mPhase stock in exchange for his services as mPhase's expert witness.  (Expert Report, at 14.)

**ARGUMENT**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).  Thus, in all cases, an expert's testimony must meet three general requirements: (1) the expert must be qualified to give his or her testimony "by knowledge, skill, experience, training, or education;" (2) the subject matter of the testimony must be proper in that it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue;" and (3) "the expert's reasoning or methodology underlying the testimony must be [] reliable." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citations omitted).  In all cases, the district court acts as the gatekeeper for expert testimony, and the party offering "the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis*, 561 F.3d at 705.

Under this standard, Mr. Parish's testimony and opinions should be excluded and the Expert Report stricken because Mr. Parish is not qualified to testify as an expert in this case, the subject matter of his proposed testimony is improper, and his opinions are not reliable.

**I.     MR. PARISH IS NOT QUALIFIED TO OFFER HIS PROPOSED OPINIONS IN THIS CASE.**

"For a witness to be considered an expert, Rule 702 requires that person to be qualified as such by 'knowledge, skill, experience, training, or education.'" *Lewis*, 561 F.3d at 705. Whether a witness is qualified as an expert can only be determined by comparing the areas in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness's testimony. *Carroll v. Otis Elevator Company*, 896 F.2d 210, 212 (7th Cir. 1990). Moreover, expertise in or knowledge of the law governing a particular subject or area does not qualify a given individual as an expert on that subject or area. *United States v. Lupton*, No. 07-CR-219, 2008 WL 22243999, 2008 U.S. Dist. LEXIS 41989, at *5 (E.D. Wis. May 28, 2008).[1] Rather, the expert must still be qualified by sufficient knowledge, skill, experience, training, or education.

For example, in *Lupton*, the court determined that an expert who was a real estate attorney and law professor was not qualified to offer opinions "with respect to the way [real estate] brokers conduct their business," despite an arguable "expertise in the *law* of real estate." *Id.* The expert in *Lupton* had not been a licensed broker for many years, had never participated in a transaction like the one at issue in the case, and had no personal experience with the statutes he sought to interpret. *Id.* As the Seventh Circuit explained in affirming *Lupton* on appeal,

> [the expert's] thirty-year distance from the day-to-day goings-on in the brokerage world and lack of experience with the statutes and contract at issue in this case call into question the extent to which his 'knowledge, skill, experience, training, or education' qualify him to render an opinion on what constitute 'innocent, normal, and acceptable practices' among real estate brokers.

---

[1] Pursuant to the Court's Case Management Procedures, Fife has attached as Exhibit B copies of any cited authority that is only published on electronic database, such as Westlaw and Lexis. Further, and pursuant to Judge St. Eve's specific Case Management Procedures, Fife has provided a Westlaw citation where available.

*United States v. Lupto*n, 620 F.3d 790, 799 (7th Cir. 2010) (internal citation omitted).[2] To qualify as an expert, an individual—attorney or not—must have some qualification beyond knowledge of the law governing a given subject area.

In the present case, mPhase attempts to offer expert testimony on federal securities laws and their application to the case (Opinions 1-5, 9-11), the DTCC and its reasons for imposing a chill on mPhase's stock (Opinion 6), and the damages incurred by mPhase (Opinions 7-8). Despite Mr. Parish's legal background, he is not a qualified expert in any one of these areas. First, assuming Mr. Parish's opinion as to federal securities law and its application is relevant and admissible testimony—and as explained in sections II.A., II.B., and II.C. below, it is not— Mr. Parish has not demonstrated how his general experience and involvement with "corporate and securities laws," along with other areas, qualify him on the specific application of Rule 10b-5. *See* Ex. A of the Expert Report. First the Expert Report provides no information about the number of Rule 10b-5 cases Mr. Parish has handled, when he worked on those cases, or the extent to which he was called upon to research and apply Rule 10b-5. Second, Mr. Parish has not practiced law since his retirement in 2003, and while he has served as the chairman of the Forum Funds board since his retirement, Mr. Parish provides no information relative to what he has done during his eleven-year retirement to stay informed of the law on which his offered opinions relate. *Id.*

---

[2] *See also Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (attorney with over 30 years of personal injury and insurance litigation experience and a co-author of *Georgia Automobile Insurance Law, Including Tort Law* was not qualified to give expert testimony on the standard of care for a claims adjuster where the attorney had never worked in the insurance industry or tried a case involving a tortuous failure-to-settle claim); *Boleman Law Firm, P.C. v. United States Trustee*, 355 B.R. 548, 552 (E.D. Va. 2006) (affirming determination by bankruptcy panel that an attorney who had served as Chapter 7 panel trustee for 15 years, had been admitted to the bar for 23 years, and had previously served as a judicial clerk was not qualified as an expert in Chapter 13 supplemental fee applications because his practice area expertise was not in Chapter 13 cases).

Similarly, with respect to the DTCC and mPhase's damages, Mr. Parish provides no information about his "knowledge, skill, experience, training, or education" in these areas—certainly nothing that qualifies him as an expert in these areas. Mr. Parish has never worked at the DTCC or any regulatory, supervisory, or governmental agency that affords him personal or professional insight into the DTCC beyond what he gleaned from Ms. DeSantis's deposition testimony.[3] Similarly, Mr. Parish is not an accountant or economist, and he has not demonstrated any special "knowledge, skill, experience, training, or education" that enables him to calculate whether and how much of any increased cost of lending or diminution of stock value was a result of the DTCC Chill. Finally, Mr. Parish has not written any material "related to any of the subject matter[s] of this litigation," he has never served as an expert witness in the past, and he does not even describe any prior involvement in the negotiation or execution of a transaction like the one at issue in this case. *Id.* Mr. Parish's testimony and opinions must therefore be excluded and the Expert Report stricken.

## II. THE SUBJECT MATTER ON WHICH MR. PARISH OFFERS OPINIONS IS UNHELPFUL, UNDULY PREJUDICIAL, AND IMPROPER.

### A. Mr. Parish's opinions regarding federal securities laws are unhelpful and are not relevant.

As a threshold matter, an expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Supreme Court has stated that this requirement "goes primarily to relevance," and that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Testimony regarding laws not at issue in a case are not helpful or relevant, and are thus not admissible. *See e.g. Lupton*, 2008 U.S. Dist. LEXIS 41989, at * 9.

---

[3] Susan DeSantis is the managing director of compliance at the DTCC and testified on its behalf at a deposition held on February 4, 2014.

Here, Fife brought contract-related claims based on mPhase's breach of the Note. *See generally* Complaint, at 5–7. In response, mPhase asserted counterclaims for breach of the Note and for common law fraud based on conduct it claims Fife took to induce mPhase's execution of the Note. *See* Answer, at 13-18. Neither the Complaint nor the Answer contains any causes of action for violation of Rule 10b-5 or any other indication of intent to pursue claims under Rule 10b-5, nor has mPhase sought leave to amend its Answer to add a claim for violation of Rule 10b-5. In fact, mPhase has never even mentioned Rule 10b-5 in any of its pleadings or discovery responses. In short, 10b-5 has never been at issue in this case until the suggestion of it in the Expert Report.

It is well settled that a party "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Certainly this prohibition includes opinions made in an expert report. Thus, mPhase cannot now assert claims for violation of Rule 10b-5 and expect to present expert evidence concerning these claims to the jury. As the *Lupton* court explained, "the proposed testimony may, by forcing a detour into matters of state law, confuse rather than enlighten the jury in reaching a verdict under [the federal statutes]." *Lupton*, 2008 U.S. Dist. LEXIS 41989, at *9 (barring expert testimony on state laws in a case brought solely under federal law).

Finally, it would be manifestly unfair to allow mPhase to introduce expert testimony regarding alleged Rule 10b-5 violations at this late stage of the case. Pleading common law fraud is not the same as pleading a Rule 10b-5 violation, as different legal and factual issues inhere in the different claims. *See, e.g. ABN AMRO, Inc. v. Capital Int'l, Ltd*., 595 F. Supp. 2d 805, 831 (N.D. Ill. 2010) ("[T]he state and common law fraud claims must meet the heightened pleading requirements of Rule 9(b), and the federal securities fraud claims must meet the even

higher pleading requirements of the Private Securities Litigation Reform Act.").[4]  Fife has not

focused his discovery or case strategy on un-pled Rule 10b-5 claims, and the time to conduct

discovery on these allegations has long since passed.  mPhase cannot remain silent on its intent

to raise claims for violation of Rule 10b-5 for the 16-months this case has been proceeding, and

then spring those claims on Fife through the Expert Report.

Testimony regarding laws and claims that are not at issue (and that have not even been

pled) are "of limited value at best and unduly confusing at worst."  *United States v. Lupton*, 620

F.3d 790, 800 (7th Cir. 2010) (affirming *Lupton*, 2008 U.S. Dist. LEXIS 41989).  Accordingly,

Opinions 1–5 and 9–11 should be excluded and stricken.  In addition, Opinion 12 should be

excluded.  Whether or not Fife sold mPhase stock under a Prospectus that did not disclose his

consent decree is not relevant to mPhase's claims, and, even if it were, it is not the sort of

evidence that requires expert testimony to introduce it at trial.

**B.  Mr. Parish's Opinions 1-5 and 9-11 constitute inappropriate legal conclusions.**

Rule 702 expressly limits expert testimony to testimony that "will help the trier of fact to

understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Thus, for example,

in a Securities case an expert witness (including a securities lawyer) may testify as to "the step

by step practices ordinarily followed by lawyers and corporations in shepherding a registration

statement through the SEC."  *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 508 (2d Cir.

1977).  Nevertheless, Rule 702 is in no way intended to permit an expert witness to usurp the

role of judge (as the legal expert) or the jury (as the party tasked with finding facts and applying

---

[4] *See also, e.g., Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011) (noting the heightened pleading
standard for securities fraud claims under the Private Securities Litigation Reform Act); *Giger v. Ahmann*,
No. 09 C 4060, 2013 WL 6730108, 2013 U.S. Dist. LEXIS 178717, at *29-30 (N.D. Ill. Dec. 20, 2013)
(noting different standards for proving reliance under common law fraud and securities fraud claims);
*Wallace Computer Servs. v. David A. Noyes & Co.*, No. 93 C 6005, 1995 WL 561112, 1995 U.S. Dist.
LEXIS 13629, at *14-15 (N.D. Ill. Sept. 15, 1995) (same).

them to the law).

With regard to an expert's opinion as to the applicability or meaning of various laws, "[a] well-settled corollary [to Rule 702] is that the Rule does not contemplate expert assistance on legal questions." *RLJCS Enters. v. Prof'l Benefit Trust, Inc.*, No. 03 C 6080, 2005 WL 3019398, 2005 U.S. Dist. LEXIS 27250, at *13 (N.D. Ill. Nov. 8, 2005) (collecting cases). Indeed, the Seventh Circuit has stated that testimony "about the meaning of a statute" is "a subject for the court," and "[t]he only legal expert in a federal courtroom is the Judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2007). Thus, for example, district courts have refused to consider expert testimony opining that one party owed a duty to another party, *Miller v. Am. Nat'l Bank and Trust Co.* No. 88 C 10909, 1992 WL 168813, 1992 U.S. Dist. LEXIS 10063, at *11 (N.D. Ill. July 13, 1992), or where an expert offered an opinion that a trust was "a security as defined by Indiana law," *Indiana ex rel. Naylor v. Indiana State Teacher's Ass'n.* 950 F. Supp. 2d 993, 1002 (S.D. Ind. 2013). In concluding as it did, the *Naylor* court explained that the expert's opinions, "if admitted, would not only duplicate legal arguments ably dealt with in counsel's analysis, but would also improperly suggest that federal courts could turn to him for legal assistance." *Id.*

Expert testimony is also limited to protect the role of the fact finder as the sole entity tasked with determining a party's liability based on the facts. Specifically, courts do not allow experts to offer opinions "on mixed questions of law and fact, *i.e. application of law to facts*." *RLJCS Enters,* 2005 U.S. Dist. LEXIS 27250, at *13 (collecting cases) (emphasis added). The *RLJCS* court struck an expert report because it presented an opinion that a party had breached a trust agreement—an improper legal conclusion obtained by applying the law to the facts. *Id.* at *16, *aff'd* 487 F.3d 494, 498 (7th Cir. 2007). Likewise, the court in *United States v. Cross*

excluded an expert that purported to "offer an opinion, based on the law of the State of Indiana, that the video gaming devices of the type rented by Munice Coin to its customers are not illegal gambling devices in the State of Indiana." *United States v. Cross,* 113 F. Supp. 2d 1282, 1285 (S.D. Ind. 2000). According to the *Cross* court, the determination of Munice Coin's liability was solely the jury's to make, and the expert was "no more qualified than the jury to apply the applicable law, as given to them by the court, to the evidence presented in the case." *Id.*

As these cases demonstrate, courts carefully limit expert testimony to ensure an expert neither usurps the role of the Judge or the jury, and the cases excluding expert testimony explaining the law or applying the law to the facts—including those cited above—are legion.[5] Here, Mr. Parish's opinions are precisely the sort of legal opinions that courts consistently exclude under Rule 702. Mr. Parrish simply summarizes the law and then applies it to this case. *See* Opinions 1-5 and 9-11. His opinion usurps the roles of both judge and jury, setting forth what he believes are the applicable statutes as well as the factual conclusions that the jury must make in applying them. The Judge is the expert on the law and does not need Mr. Parish's legal advice to state it or interpret it. Neither does the jury need Mr. Parish's advice to apply the law to the facts. Accordingly, this Court should strike Opinion Nos. 1-5 and 9-11 and exclude Mr. Parish's testimony on those subjects.

---

[5] *See, e.g., Marx & Co.*, 550 F.2d at 508 (holding that a district court erred by allowing a witness to give an opinion "as to the legal standards" that governed the parties and "what was necessary to fulfill the covenant of the contract"); *Hershey v. Pac. Inv. Mgmt Co.*, 697 F. Supp. 2d 945, 952 (N.D. Ill. 2010) (excluding an expert's opinions as to a party's duties and that that party breached those duties); *Harris Trust & Savings Bank v. Salomon Brothers, Inc.*, No. 92 C 5883, 1996 U.S. Dist. LEXIS 8485, at * 49-50 (N.D. Ill. June 18, 1996), *rev'd on other grounds* 184 F.3d 646 (striking affidavits of two experts because they opined that the agreements at issue were not securities); *United States v. Cohen*, No. 08-3282, 2012 WL 289769, 2012 U.S. Dist. LEXIS 11627, at *7-8 (C.D. Ill. Jan. 31, 2012) (excluding expert testimony "applying principles of New York trust law to the specific trusts at issue in th[e] case").

## C. Allowing Mr. Parish to present testimony concerning securities law and Rule 10b-5 would be unduly prejudicial.

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. The Second Circuit has noted "the tendency of juries on occasion to decide simply according to the preponderance of numbers and of influential names." *Marx & Co.*, 550 F.2d at 512 n.20 (internal quotation marks omitted). Accordingly, the Supreme Court has assigned district court judges a "gatekeeping role" to ensure that—before it is permitted in a given case—" an expert's testimony both rests on reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

Here, the danger of allowing Mr. Parish to provide his legal opinions is that "the jury [could] infer that it could look to [Mr. Parish] for legal guidance," which would "impermissibly tilt[] the balance of power between the parties toward [mPhase]." *Harbour Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990). More than that, "the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law." *Marx & Co.*, 550 F.2d at 512. Simply put, there is one referee in this match—the Judge—and it would be unduly prejudicial to allow mPhase to present any testimony that confuses the jury or otherwise interferes with an objective application of the law to the facts. The Court should accordingly strike Opinion Nos. 1-5 and 9-11 and exclude Mr. Parish's testimony on those subjects.

## D. Rule 702 does not permit Mr. Parish to Offer Opinions as to the DTCC's or mPhase's state of mind.

An expert witness may not testify regarding other actors' state of mind, including another party's intent or its motivations in taking certain actions. *See, e.g.*, *Hershey v. Pac. Inv. Mgmt.*

*Co. LLC*, 697 F. Supp. 2d 945, 950 (N.D. Ill. 2010) (excluding expert testimony regarding the defendant's alleged intent to manipulate prices, and that such manipulation caused a regulatory agency to "institute[ ] position limits" that the plaintiff claimed harmed it).  In excluding expert testimony, the *Hershey* court reasoned that none of the expert's qualifications demonstrated that the expert "[wa]s competent to opine on the mental states of others . . . . [or] affords him the ability to read minds."  *Id.*  The court further reasoned:  "Permitting [the expert] to testify regarding the state of mind of either [defendant] or the [regulatory agency] would effectively allow him to substitute his inferences for those that the trier of fact can and should draw on its own."  *Id.*  Finally, the court noted that exclusion of the opinion regarding the regulatory agency was especially appropriate because the expert's opinion was at odds with the regulatory agency's own statement regarding its motivations.  *Id.*  Indeed, the expert had opined that the defendant's action prompted the position limits, but the agency itself stated that there were a number of other factors as well.  *Id.* at 950–51.

The opinions included in the Expert Report offered by mPhase are strikingly similar to those submitted and rejected in *Hershey*.  The Expert Report purports to divulge the state of mind of both mPhase and the DTCC, most blatantly so in Opinions 5 and 6.  For example, Opinion 5 states that mPhase did not have constructive notice of the Consent Decree and, if it had *known* of the Consent Decree, it would not have taken Fife's money and issued convertible notes to Fife.  *See* Expert Report at 11.  Like the expert in *Hershey*, however, none of Mr. Parish's qualifications afford him the ability to "read minds," and he may not testify regarding mPhase' intent and motivation.  To the extent that Mr. Parish heard from mPhase that it would not have issued the Note, the trier of fact should hear these statements directly from their source, not from Mr. Parish.  *See Hershey*, 697 F. Supp. 2d at 951.

14

Opinion 6 states that a consent to judgment stipulated to by Fife in an unrelated action (the "**Consent Decree**") "may well have been an ingredient in causation of the DTCC Chill." *See* Expert Report at 11.  Mr. Parish purports to rely on the Deposition of Susan DeSantis, in reaching this conclusion.  However, the Expert Report itself acknowledges that Ms. DeSantis did not remember the details of the DTCC Chill and, specifically, did not recall whether the Consent Decree played any role whatsoever in the DTCC Chill.  *See* Expert Report at 11; *see also* Deposition of Susan DeSantis ("**DeSantis Depo.**"), February 4, 2013, at 35:3–16, 55:13–17, a copy of the relevant portions of the DeSantis Depo are attached hereto as Exhibit C.  Moreover, Ms. DeSantis testified that a number of factors may trigger a chill.  *See* DeSantis Depo. 29:16–30:12.  As such, like the opinion the *Hershey* court excluded, Mr. Parish's opinion forms conclusions based on the DTCC's alleged state of mind, while contradicting the DTCC's actual testimony.  Accordingly, the Court should strike Opinion Nos. 5 and 6 and exclude Mr. Parish's testimony on those subjects.

### III.    MR. PARISH'S OPINIONS ARE NOT RELIABLE AND SHOULD BE EXCLUDED.

The Seventh Circuit has consistently held that an expert may not rely simply on bare assumptions, conclusions, and mountains of fact; rather, for lack of a better term, an expert must show his work.  To do so, an expert must (1) demonstrate that he has relied on the scientific method in reaching his conclusions, including "hands on testing," and the application of reliable scientific data, *see Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999) ("It is axiomatic that proffered expert testimony must be derived by the scientific method"); (2) offer opinions "supported by evidence" and not "controverted by the facts,"  *see MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096, 2009 WL 1916728, 2009 U.S. Dist. LEXIS 55652, at *13–16 (S.D. Ind. June 29, 2009); and (3) include the basis for his conclusions, rather than simply

dumping "a mountain of facts on one side and the conclusion on the other, and give no roadmap as to how he got there," *see Vollmert v. Wis. Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999); *see also Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011). Here, the Expert Report falters on each of these three grounds.[6]

First, although the Expert Report lists a number of documents Mr. Parish claims to have reviewed, the report is silent regarding any methodology that he used to review the facts and arrive at his conclusions. Mr. Parish does not explain what methodology he employed or how he selected the materials that he chose to review. He does not purport to rely on any accepted research method, statistical analysis, or other scientific approach or method. And, as discussed below, he does not even bother to explain why particular facts are emphasized and others are omitted. The Expert Report instead relies on Mr. Parish's "experience" in the field of federal securities laws—which experience provides no substitute for sound methodology.

Second, the Expert Report is not supported by evidence and, in some instances, contradicts the evidence presented in this case. Although this problem plagues virtually every aspect of the Expert Report, it is perhaps most striking with respect to Opinions 2, 6, 7, 8, and 9. For example, conclusions 7 and 8 deal with Defendant's alleged damages. *See* Expert Report at 6. Mr. Parish concludes that "the DTCC Chill caused Defendant to incur a substantial and material increase in the cost of issuing further Convertible Securities during the term of the

_____

[6] Mr. Parish's report is also unreliable because it relies on inadmissible hearsay (both with DeSantis and the causation analysis). "Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Daubert*, 509 U.S. at 595; *see also Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). Here the witness is merely parroting testimony offered by other witnesses and telling the fact-finder to believe those statements. *See Dura*, 285 F.3d at 613. In so doing, Mr. Parish takes away the role of the jury as well as asking them to make those determinations on evidence that is widely recognized for its unreliability: hearsay. *See In re James Wilson Assocs.*, 965 F.2d 160, 172–73 (7th Cir. 1992).

DTCC Chill." *Id.* at 12. Rather than offer any concrete support from record evidence, Mr. Parish cites one unrelated and anecdotal account of mPhase issuing a Convertible Note to a company at a 40% discount from the fair market value of mPhase's stock, rather than the 15%–20% discount that Defendant allegedly gave before the Chill. *Id.* The Expert Report provides no other support for these conclusions. Further, the report cites no evidence that the difference in "discount" was the result of the Chill, and Mr. Parish's unsupported assumption and speculation renders his conclusion on this issue unreliable. *See MDG Int'l*, 2009 U.S. Dist. LEXIS 55652, at *13–14 ("[A]n expert's opinions must be based on the evidence in the case, and, if he bases his opinions on empirical assumptions, those assumptions must be supported by evidence." (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000)); *see Quinones-Pacheco v. Am. Airlines, Inc.*, 979 F.2d 1, 6 (1st Cir. 1992) (affirming the exclusion of expert testimony "predicated on an assumption not supported by the record").

Third, Mr. Parish's analysis discusses only facts that support his conclusions without analyzing any other facts and without explaining how he chose to rely on the facts he states. Indeed, Mr. Parish puts forth a "mountain" of facts in each section of his report, which are interwoven with his legal conclusions. Like a good legal brief, the facts are clearly presented in the order and manner that best support Mr. Parish's arguments and conclusions. However, Mr. Parish provides no useful roadmap or explanation of how *all* the facts (not just those that he recites) lead to his conclusions. Using the same example discussed above, Mr. Parish's conclusions regarding causation and damages state only the bare facts necessary to state a conclusion. Mr. Parish does not recite any other facts or explain why alternate theories of causation were rejected. Due to Mr. Parish's unwarranted selective statement of the facts, the Court is unfairly left to wonder what other facts exist and Mr. Parish's reason, if any, for

17

ignoring them.  Rule 702 is meant to prevent this sort of judicial guessing game by barring, as unreliable, expert reports that contain such factual gaps.

## IV.     THE EXPERT REPORT IS NOT RELIABLE BECAUSE MR. PARISH HAS A DIRECT, PECUNIARY INTEREST IN THE OUTCOME OF THIS CASE

If an expert report "is biased to a degree that renders it unreliable within the meaning of Rule 702, the bias affects the admissibility of [the] report."  *EEOC v. Dial Corp.*, No. 99 C 3356, 2002 WL 31061088, 2002 U.S. Dist. LEXIS 17543, at *30–31 (N.D. Ill. Sep. 17, 2002).  Thus, courts have found that an expert's opinion crafted only for litigation might be sufficiently biased to warrant exclusion.  *See, e.g.*, *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1120 (D. Or. 2010).  Mr. Parish's report suffers from this bias.  In addition, Mr. Parish's report suffers from an even more extreme form of bias resulting from Mr. Parish's direct financial stake in the outcome of this litigation.

Mr. Parish has received mPhase stock in exchange for his services in this matter.  *See* Expert Report at 14.  This payment method creates an obvious improper incentive[7] for Mr. Parish to offer testimony in a way that will increase the value of mPhase's stock: if the Court agrees with the Expert Report and mPhase prevails, the value of Mr. Parish's stock will increase, thereby increasing his compensation.  The resulting bias of this arrangement taints the entire Expert Report.  While this alone may not be sufficient to warrant exclusion of the Expert Report, considered in connection with the numerous other deficiencies described above, Mr. Parish's economic bias renders the Expert Report unreliable and inadmissible.  The Court should strike

---

[7] Rule 3.4(b) of the Illinois Rules of Professional Conduct states that "[a] lawyer shall not . . . offer an inducement to a witness that is prohibited by law."  Comment three to this rule states that it is not improper for a lawyer to pay an expert witness on terms permitted by law.  Rule 3.4, cmt [3].  However, the comment goes onto explain that "[a]n offer or payment of expenses *may not be contingent on the content of the testimony or the outcome of the litigation*, or otherwise prohibited by law."  *Id* (emphasis added).

the Expert Report and exclude Mr. Parish's testimony.

**CONCLUSION**

Mr. Parish is not qualified to offer expert opinions in this case, and the opinions he proposes to offer are wholly unreliable. Moreover, Mr. Parish's opinions consist almost entirely of impermissible legal conclusions and opinions about third parties' states of mind (the DTCC and mPhase). Accordingly, the Court should enter an order excluding Mr. Parish's testimony and opinions and striking the Expert Report.

Respectfully submitted,

JOHN FIFE

 /s/ Brigman L. Harman
By: Brigman L. Harman, one of his Attorneys

Jeremy C. Reutzel (pro hac vice)
Brigman L. Harman (pro hac vice)
Bennett Tueller Johnson & Deere
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121-5027
Telephone: (801) 438-2000
Email: jreutzel@btjd.com

Scott L. Warner (06231380)
Ellen F. Wetmore (06304273)
Franczek Radelet P.C.
300 S. Wacker Dr., Suite 3400
Chicago, Illinois 60606
Telephone: (312) 986-0300
Email: slw@franczek.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney certifies that he served the foregoing on the following attorneys

of record via the Court's CM/ECF system on this 1st day of April, 2014:


Richard Roth                           Darrell J. Graham
The Roth Law Firm PLLC                 Roser Bucheit & Graham
295 Madison Avenue, Floor 22           Two Riverside Plaza, Suite 1420
New York, NY 10017                     Chicago, IL 60606
Rich@rrothlaw.com                      dgraham@rbglegal.com



                                   By: _____/s/Brigman L. Harman_____