# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOHN FIFE, an individual, | Case No.: 1:12–CV–09647 |
| Plaintiff, | Judge: Honorable Amy J. St. Eve |
| v. | Magistrate: Daniel G. Martin |
| MPHASE TECHNOLOGIES, INC, a New Jersey corporation, | |
| Defendant. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL FACTS

Plaintiff John Fife ("***Fife***"), through his attorneys of record, and pursuant to L.R. 56.1 of the Local Rules and the United States District Court for the Northern District of Illinois, submits the following response to Defendant's Statement of Additional Undisputed Material Facts:

**DEFENDANT STATEMENT NO. 1:** mPhase is a publically-held, micro-cap (*i.e.*, a company whose stock trades at less than $1 per share), technology company with approximately 23,000 shareholders whose stock is traded on the Pink Sheets as a public reporting company. (Smiley Afdt. ¶ 4, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:**[1] Undisputed for purposes of the pending motion for summary judgment only.

---

[1] Facts designated as undisputed in this Response are undisputed solely for purposes of Plaintiff's Motion for Summary Judgment. Plaintiff does not admit such facts for purposes of trial or any other purpose in connection with this litigation.

**DEFENDANT STATEMENT NO. 2:**  As a microcap, mPhase is under the close scrutiny of the SEC and of organizations, such as the Depository Trust Company ("DTC"), which enables trades of securities of publicly-traded companies in the United States to be completed electronically through "book-entry" changes to show the ownership of the securities, rather than by requiring delivery of physical stock certificates. (Smiley Afdt. ¶ 5, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE:**  Disputed, but immaterial.  Statement No. 2 is conclusory and improper opinion testimony and is not supported by admissible evidence.  mPhase cites to Martin Smiley's ("*Smiley*") affidavit, but Smiley has not been (and is) not qualified as an expert or otherwise to testify regarding the SEC's or the DTC's practices and operations, nor has Smiley set forth adequate foundation or personal knowledge to support his testimony and opinions on these matters.  Moreover, the DTC monitors for large share deposits—it does not monitor specific people or entities.  (Pl.'s Stmt. Fact, Ex. 17, 16:25-18:6.)

**DEFENDANT STATEMENT NO. 3:**  Most securities of publicly-traded companies in the United States are bought and sold electronically through "book-entry" changes to show the ownership of the securities, rather than by the delivery of physical stock certificates. (Smiley Afdt. ¶ 5, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial.  Statement No. 3 is improper opinion, lacks foundation, and is not support by admissible evidence.  mPhase cites to Smiley's affidavit, but Smiley has not been (and is) not qualified as an expert or otherwise to testify regarding the securities of publicly-traded companies in the United States, nor has Smiley set forth adequate foundation or personal knowledge to support his testimony and opinions on these matters.

**DEFENDANT STATEMENT NO. 4:** On its own, and in partnership with Bell Laboratories and Lucent World Wide Services, mPhase has developed a battery that employs an advanced technology different from that of existing batteries and was in the product-development and/or the pre-marketing phase during the relevant time period. (Smiley Afdt. ¶ 6, **Exhibit "A"**)

**PLAINTIFF'S RESPONSE:** Undisputed, for purposes of the pending motion for summary judgment only, but immaterial.

**DEFENDANT STATEMENT NO. 5:** Fife owns and operates his own hedge funds, including: St. George Investments, LLC ("St. George Investments") and Clarion Management, LLC ("Clarion"), and is in the business of investing in convertible securities issued by microcap companies, such as mPhase. (Smiley Afdt. ¶ 7, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife objects to Statement No.5 because it is conclusory, lacks foundation, and is not support by admissible evidence. mPhase cites to Smiley's affidavit, but Smiley is not qualified to testify as to the ownership and operation of St George Investments, LLC and Clarion Management, LLC, nor has Smiley set forth adequate foundation and personal knowledge to support his testimony and speculation on these matters. Finally, St George is not a hedge fund, and Clarion Management is no longer in operation and when it was in operation it did not make PIPE investments. (Second Declaration of John Fife ("***Second Fife Dec.")*** ¶¶ 4 -7, attached hereto as Exhibit 1.)

**DEFENDANT STATEMENT NO. 6:** To finance its product development and marketing efforts, starting in late December 2007, mPhase began raising capital by issuing variable convertible securities, in which the lender can elect to convert money owed under the note into the stock of the borrower at a discount from the prevailing market-price of the

3

borrower's stock. Consequently, anything that interferes with mPhase's ability to access capital markets is fatal to its ability to sell its stock, pay its debt and fund its research, design and marketing efforts. (Smiley Afdt. ¶ 8, **Exhibit "A"**.)

 **PLAINTIFF'S RESPONSE:**  Fife admits mPhase has received funding by issuing convertible debt.  Fife disputes the remainder of Statement No. 6, including mPhase's statement that "anything that interferes with mPhase's ability to access capital markets is fatal to its ability to sell its stock, pay its debt and fund its research, design and marketing efforts" because it is immaterial, conclusory, improper opinion, speculative, lacks foundation, and is not supported by admissible evidence.  mPhase cites to Smiley's affidavit, but he is not qualified as an expert to opine on these matters, nor does he set forth the foundation, specific facts, and personal knowledge necessary to support Statement No. 6.

 **DEFENDANT STATEMENT NO. 7:**  All stock issued by mPhase to shareholders who hold such securities in broker street name are deposited in DTC's depository arm (CEDE), among other things, to allow electronic trading of the issuer's securities. (Smiley Afdt. ¶ 9, **Exhibit "A".**)

 **PLAINTIFF'S RESPONSE:** Undisputed, for purposes of the pending motion for summary judgment only, but immaterial.

 **DEFENDANT STATEMENT NO. 8:** When a problem arises with a company or its securities on deposit at the DTC, the DTC may impose a "chill" on all of the company's securities, which may include a refusal to allow electronic trading of an issuer's securities, and restricting settlement of trades of the issuer's stock to the delivery of physical stock certificates between brokers. (Smiley Afdt. ¶ 10, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Fife does not dispute the DTC may impose a chill on a particular security for any number of reason—not necessarily as a result of a problem with the particular security. Fife objects to the remainder of Statement No. 8. because it is immaterial, improper opinion, and is not supported by admissible evidence. mPhase cites to Smiley's affidavit, but Smiley has not been (and is) not qualified to testify to the DTC's practices and operations, nor has Smiley set forth adequate foundation or personal knowledge to support his testimony and opinion on such matters.

**DEFENDANT STATEMENT NO. 9:** A DTC-chill significantly affects the ability of mPhase's 23,000 shareholders and prospective investors to trade in its securities since very few broker/dealers and their clearing firms will deal with "chilled" securities, and the few that do charge very substantial fees. (Smiley Afdt. ¶ 11, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife objects to Defendant's Statement No. 9. It is conclusory, speculative, improper opinion, and is not supported by admissible evidence. mPhase cites to Smiley's affidavit, but Smiley has not been (and is) not qualified to testify to the DTC's, mPhase's shareholders', prospective investors', or third party broker/dealers' practices, operations, and fees. He is not an expert in such matters, nor has Smiley set forth specific facts, adequate foundation, or personal knowledge sufficient to support his testimony on the matters set forth in Statement No. 9.

**DEFENDANT STATEMENT NO. 10:** In the case of mPhase, which is highly dependent upon the trading volume and liquidity of its stock to fund its operations, the imposition of a chill by DTC is a potentially life-threatening event since it depends on continuously raising capital as a development-stage company. (Smiley Afdt. ¶ 12, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife objects to Defendant's Statement No. 10 because it is immaterial, conclusory, speculative, improper opinion, and is not supported by admissible evidence. mPhase cites to Smiley's affidavit, but Smiley fails to set forth foundation, specific facts, or personal knowledge sufficient to support his conclusions and opinions, nor does he explain how a DTC chill is "life-threatening." The fact is mPhase is still in business, and the DTC chill was removed because mPhase established that the shares it issued were freely tradeable. (Pl.'s Stmt. Fact, Ex. 17, 79:10-16.) Further, Statement No. 10 is immaterial because it relates to mPhase's potential, speculative harm—not actual harm suffered while the chill was imposed. Finally, Statement No. 10 is opinion, and Smiley is not and has not been qualified as an expert.

**DEFENDANT STATEMENT NO. 11:** On August 9, 2007, in connection with a prior violation of Section 10(b) of the Securities Exchange Act, Fife and Clarion entered into a Consent Decree, under which, Fife paid a total of $529,382 in disgorgement of illicit profits and civil penalties, and was enjoined from future violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act by the United States District Court. (*SEC v. Fife*, Case No. 07-0347 (N.D. Ill.), ECF. 123; Consent Decree, ECF (instant case) 16-2.)

**PLAINTIFF'S RESPONSE:** Disputed. mPhase incorrectly indicates that the Final Judgment was a finding of a 10b-5 violation. The Final Judgment specifically states that Fife consented to the Final Judgment "without admitting or denying the allegations of the Complaint." (A true and correct copy of the Final Judgment is attached hereto as Exhibit 2.) Fife also objects to the Defendant's Statement No. 11 as immaterial, irrelevant, prejudicial, and as not support by admissible evidence. Reference to Fife's settlement with the SEC is an attempt to impugn Fife using irrelevant information for the purpose of convincing the Court that Fife

6

must have engaged in fraud in this case because he settled a matter with the SEC—a matter that was settled without a finding of guilt, more than 5 years ago. This is impermissible evidence under, among other rules, Federal Rule of Evidence 608(b).

**DEFENDANT STATEMENT NO. 12:** On February 29, 2008, pursuant to a solicitation by Fife, mPhase signed a contract and issued a convertible note (both drafted by Fife's counsel) to St. George Investments in the amount of $550,000, and received approximately $500,000 in cash proceeds. (Smiley Afdt. ¶ 13, **Exhibit "A"** & **Exhibit "B".**)

**PLAINTIFF'S RESPONSE:** Fife disputes Statement No. 12 to the extent it seeks to downplay or conceal mPhase's input and involvement in the negotiation and drafting of the referenced agreements. (Second Fife Dec. (Ex. 1) ¶ 8.) Moreover, the note and contract referenced in Statement No. 12 is immaterial because it is not at issue in this lawsuit. Further, this note is irrelevant because it is not part of the transaction at issue and is not raised in the parties' pleadings. Finally, the date of the attached note is February 28, 2008, and mPhase did not attach any other "contract."

**DEFENDANT STATEMENT NO. 13:** On June 29, 2009, mPhase fully paid the 2008 Note, including $550,000 of principal and $64,208 of interest, through Fife's conversions of amounts due under the Note into 60,538,400 shares of mPhase stock. Fife received proceeds of approximately $1,088,857 from sales of the mPhase stock, resulting in a profit of $474,649, over and above the interest that Fife collected – a rate of return of approximately 95% in less than one and a half years. (Smiley Afdt. ¶ 14, **Exhibit "A"**; Fife Dep. at 135:6-16, **Exhibit "C";** & Answer at 11, ECF 16**.**)

**PLAINTIFF'S RESPONSE:** Fife does not dispute that mPhase fully paid the 2008 Note, but reserves the right to challenge as much at trial. Fife, however, objects to Statement No.

13 because it is conclusory, lacks foundation, and is not supported by admissible evidence. mPhase cites to Smiley's affidavit, but Smiley fails to set forth any specific facts, personal knowledge, or foundation for his conclusions, figures, and opinions.  Further, Statement No. 13 is immaterial and irrelevant because it relates to a transaction not at issue in this lawsuit, and Fife's rate of return is immaterial.

**DEFENDANT STATEMENT NO. 14:**  On March 3, 2010, pursuant to a second solicitation by Fife, mPhase executed a second contract and issued a second convertible note (both drafted by Fife's counsel) to Fife in the amount of $550,000, and received $500,000 in cash proceeds. (Smiley Afdt. ¶ 15, **Exhibit "A";** & 2010 Note, **Exhibit "D"**.)

**PLAINTIFF'S RESPONSE:** Undisputed for purposes of the pending motion for summary judgment only.  Moreover, Fife disputes the materiality and relevancy of this statement.  It was a separate transaction from the one at issue in this lawsuit.  Finally, mPhase actively negotiated the terms of the referenced note.  (Second Fife Dec. (Ex. 1) ¶ 8.)

**DEFENDANT STATEMENT NO. 15:**  Within the next year and a half, mPhase re-paid $235,743, plus additional charges of approximately $218,662, through Fife's conversions of amounts due under the 2010 Note into 216,827,483 shares of common stock of mPhase. Fife received proceeds of approximately $954,405, from sales of the mPhase common stock, resulting in a profit of $454,405. (Smiley Afdt. ¶ 16, **Exhibit "A"**; & Answer at 11-12, ECF 16**.**)

**PLAINTIFF'S RESPONSE:** Disputed.  Fife objects to Statement No. 15 because it is conclusory, lacks foundation, and is not supported by admissible evidence.  mPhase cites to Smiley's affidavit, but Smiley fails to set forth any specific facts, personal knowledge, or foundation for his conclusions, figures, and opinions.  Further, Statement No. 15 is immaterial and irrelevant because it relates to a transaction not at issue in this lawsuit.  Finally, the number

8

of shares converted and figures set forth in Statement No. 15 are inaccurate. (Second Fife Dec. (Ex. 1) ¶ 9.)

**DEFENDANT STATEMENT NO. 16:** A disagreement arose between Fife and mPhase as to whether the remaining balance on the 2010 Note was $382,914 or $328,000. (Smiley Afdt. ¶ 17, **Exhibit "A"**; Forbearance Agreement at 1, **Exhibit "E"**.)

**PLAINTIFF'S RESPONSE:** Disputed. This statement is immaterial and irrelevant because it relates to a transaction not at issue in this litigation. mPhase ran into financial difficulties and quit honoring its obligations under the 2010 Note. (Second Fife Dec. (Ex. 1) ¶ 10.) While the parties were negotiating a forbearance agreement and the balance to include therein, mPhase complained about the charges included in the 2010 Note balance as a result of mPhase's breach of the 2010 Note. (*Id*.) There was no dispute about the principal balance of the 2010 Note, nor was there a dispute that mPhase had not honored its obligation to honor conversion notices as required by the 2010 Note. (*Id*.)

**DEFENDANT STATEMENT NO. 17:** On or about June 17, 2011, mPhase was notified that the DTC had imposed a chill on its stock, under which the DTC refused to settle any trades of mPhase's stock electronically, but, instead, required the delivery of physical stock certificates to settle such trades. mPhase was not told the reason for the chill. (Smiley Afdt. ¶ 18, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Undisputed for purposes of the pending motion for summary judgment only, but immaterial.

**DEFENDANT STATEMENT NO. 18:** On September 13, 2011, pursuant to a third solicitation by Fife, mPhase executed a third contract and issued a third convertible note (both drafted by Fife's counsel); and, as an incentive, Fife accepted mPhase's computation of the

outstanding balance of the 2010 Note pursuant to the terms of a Forbearance Agreement dated September 13, 2011 . (Smiley Afdt. ¶¶ 19-20, **Exhibit "A";** Forbearance Agreement, **Exhibit "E"** & 2011 Note at 1, ECF 1-2.)

      **PLAINTIFF'S RESPONSE**:  Fife does not dispute that Fife and mPhase executed the Loan Documents.  Fife disputes that he solicited mPhase in connection with the September 13, 2011 note.  mPhase actually solicited Fife. (Second Fife Dec. (Ex. 1) ¶ 11.)  Fife also disputes that he offered to compromise the balance of the 2010 Note in the Forbearance agreement as an incentive to mPhase to enter into the 2011 Note.  (*Id.*)  The Forbearance Agreement says nothing about the 2011 Note, and the 2011 Note says nothing about the Forbearance Agreement.  Fife also objects to this statement because it attempts to characterize his state of mind and thought process.  Smiley is not qualified to testify as to what Fife thought or why he did what hid did.  Smiley has not set forth sufficient foundation, specific facts, or personal knowledge to support Statement No. 18.  Finally, these facts are immaterial and irrelevant because they do not relate to mPhase's breaches of the agreements at issue in this lawsuit or any of mPhase's pleaded facts and defenses.

      **DEFENDANT STATEMENT NO. 19:**  Under the 2011 Note, mPhase received $300,000 upon execution; but, unlike the prior Notes, would only receive a second payment of $200,000 if mPhase filed a Form S-1 Registration Statement with the SEC within 30 days of the execution of the 2011 Contract and Note for mPhase stock that Fife could potentially convert under the Note and sell immediately to the public. (Smiley Afdt. ¶ 22, **Exhibit "A"**; & 2011 Note at 1, ECF 1-2.)

      **PLAINTIFF'S RESPONSE:**  Disputed in part.  mPhase's obligations relating to a Registration Statement is governed by the parties' Securities Purchase Agreement and

Registration Rights Agreement. (Second Fife Dec. (Ex. 1) ¶ 12.) The Securities Purchase

Agreement states:

> The Second Tranche Purchase Price shall be paid at such time as [mPhase] has filed with the SEC the applicable S-1 Registration Statement ("Registration Statement"), as required by that certain Registration Rights Agreement, dated of even date herewith, . . . ; provided, however, that in the event [mPhase] fails to file the Registration Statement within 30 days of the date hereof, [Fife] shall have the option, but not the obligation, to fund the Second Tranche Purchase Price and thereby purchase the Second Tranche.

(Pl.'s Stmt. Fact, Ex. 2, ¶ 2(a)(iii)). A true and correct copy of the Registration Rights

Agreement (the "***Registration Agreement***") is attached hereto as Exhibit 3. (Second Fife Dec.

(Ex. 1) ¶ 12.) The Registration Agreement states, in relevant part, as follows:

> **3.      Obligations of the Company.** In connection with the registration of the Registrable Securities, [mPhase] shall do each of the following:

> (a) Prepare promptly and file with the SEC by the Required Date a Registration Statement . . . , which Registration Statement (including any amendments or supplements thereto and prospectuses contained therein) shall not contain any untrue statement or material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading; . . .

> (c) Permit a single firm of counsel designated by [Fife] (which, until further notice, shall be deemed to be Carman Lehnof Israelsen, LLP, Attn: Jonathon K. Hansen, which firm has requested to receive such notification, "Investor's Counsel") to review the Registration Statement and all amendments and supplements thereto within a reasonable period of time (but not less than three (3) trading days) prior to their filing with the SEC, and not file any document in a form to which such counsel reasonably objects; . . .

> (d) Notify [Fife] and [Fife]'s Counsel immediately . . . of the occurrence of any event that to the best knowledge of [mPhase] makes any statement made in the Registration Statement or Prospectus or any document incorporates or deemed to be incorporated therein by reference untrue in any material respect or that requires any revision to the Registration Statement, Prospectus, as the case may be, it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. . . .

(f)  As promptly as practicable after becoming aware thereof, notify [Fife] of the happening of any event of which [mPhase] has knowledge, as a result of the which the prospectus included in the Registration Statement, as then in effect, includes an untrue statement of a material fact or omits to state a material fact required to be stated herein or necessary to make the statements therein, in light of the circumstance under which they were made, not misleading, and use its best efforts promptly to prepare a supplement or amendment to the Registration Statement or other appropriate filing with the SEC to correct such untrue statement or omission, and deliver a number of copies of such supplement or amendment to [Fife] as [Fife] may reasonably request; . . .

**4.**      **Obligations of the Investor.**  In connection with the registration of the Registrable Securities, [Fife] shall have the following obligations:

(a)      [Fife], by [his] acceptance of the Registrable Securities, agrees to cooperate with [mPhase] as reasonably requested by [mPhase] in connection with the preparation and filing of the Registration Statement hereunder . . . .

**6. Indemnification. . . .**

(a)      To the extent permitted by law, [mPhase] will indemnify and hold harmless [Fife], the directors, if any, of [Fife], and the officers, if any, of [Fife] (each, and "***Indemnified Party***"), against any losses, claims, damages, liabilities or expenses (joint or several) incurred (collectively, "Claims") to which any of them may become subject under the Securities Act, Securities Exchange Act of 1934, as amended (the "***Exchange Act***"), or otherwise, insofar as such Claims (or actions or proceedings, whether commenced or threatened, in respect thereof) arise out of or are based upon . . . (ii) any untrue or alleged untrue statement or a material fact contained in the final prospectus (as amended or supplemented, if [mPhase] files any amendment thereof or supplement thereto with the SEC) or the omission or alleged omission to state therein any material fact necessary to make the statement made therein, in light of the circumstances under which the statements therein were made, not misleading or (iii) any violation or alleged violation by [mPhase] of the Securities Act, the Exchange Act, any state securities law . . . .

**12. Miscellaneous.**

(l)      This Agreement (including to the extent relevant the provision of other Transaction Agreements) constituted the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings among the parties hereto with respect to the subject matter hereof.  There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein.

(Registration Agreement (Ex. 3) §§ 3, 4, 6, 12.)

**DEFENDANT STATEMENT NO. 20:** Further, while the 2008 and 2010 Contracts/Notes provided that Fife could not acquire more than 4.99% of mPhase's stock, the 2011 Note increased the limit to 9.99% of mPhase's stock. (Smiley Afdt. ¶ 21, **Exhibit "A"**; *compare* Exhibits "B" at 3 *and* "D" at 11 with 2011 Note at 5, ECF 1-2.)

 **PLAINTIFF'S RESPONSE:** Undisputed for purposes of the pending motion for summary judgment, but immaterial.

 **DEFENDANT STATEMENT NO. 21:** Table 1 summarizes the decline in the market price of mPhase's stock on the execution date of the three Notes.

| TABLE 1 | | | |
|---|---|---|---|
| | **2008 Note** | **2010 Note** | **2011 Note** |
| Execution Date | February 29, 2008 | March 3, 2010 | September 13, 2011 |
| Daily High | $0.08/share | $0.03/share | $0.0070/share |
| Daily Low | $0.07/share | $0.02/share | $0.0065/share |

 (Smiley Afdt. ¶ 24, **Exhibit "A"**; & Daily Hi-Lo stock prices for mPhase as of February 29, 2008, March 3, 2010 and September 13, 2011, taken from *www.marketwatch.com/tools/**quotes**/**historical**.asp, **Exhibit "F"**.*

 **PLAINTIFF'S RESPONSE:** Undisputed, for purposes of the pending motion for summary judgment only, but immaterial.

 **DEFENDANT STATEMENT NO. 22:** The mPhase stock that Fife converted under the 2008 and 2010 Notes was exempted from registration requirements by 17 C.F.R. § 230.144 ("Rule 144") and, on Fife's assumption that he was a non-affiliate of mPhase, could be sold by Fife without restriction as to the number of shares that could be sold in any 90-day period. However, due to Fife's increased ownership and control of mPhase contemplated by the 2011 Note, it was likely that Fife would be considered an affiliate of mPhase under Rule 144, and, therefore, subject to the limitations imposed by Rule 144 on the amount of unregistered stock

that can be sold by an affiliate during any 90 day period. Further Due to the decline in the market value of mPhase stock, the Rule 144 limitations on affiliates would have made it impossible for Fife to recoup his investment through stock sales by the maturity date (August 31, 2012) of the 2011 Note. (Smiley Afdt. ¶ 25, **Exhibit "A".**)

      **PLAINTIFF'S RESPONSE:** Disputed. Statement No. 22 is comprised of legal conclusions, argument, speculation, conjecture, improper opinion, and is not supported by admissible evidence. It does not contain facts. mPhase cites to Smiley's affidavit for support, but Smiley has not been qualified to give legal opinions and market analysis, nor is he qualified to testify as to Fife's assumptions or speculate as to whether Fife could have qualified as an affiliate of mPhase. Moreover, Smiley does not have personal knowledge, nor has he set forth any foundation for his opinions. Finally, this statement of fact is inconsistent with Defendant's Statement No. 20, which provides that Fife was not allowed to own more than 9.99% of mPhase's stock and therefore could not have been an affiliate of mPhase. Moreover, Fife at no point in time ever owned more than 9.99% of mPhase's stock. (Second Fife Dec. (Ex. 1) ¶ 16.)

      **<u>DEFENDANT STATEMENT NO. 23</u>:** To avoid this problem, as a pre-condition of the $200,000 payment, Fife required mPhase to register with the SEC the stock that Fife could potentially convert under the 2011 Note, which permitted Fife to sell an unrestricted number of mPhase shares during over any period of time. (Smiley Afdt. ¶ 26, **Exhibit "A".**)

      **PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife incorporates herein his responses to Defendant's Statement Nos. 19 and 22. Fife disputes mPhase's characterization of his intentions and its obligations under the Purchase Agreement and Registration Agreement and again objects on the grounds that Smiley is not qualified to testify as to what Fife thought or what his motivations were. The agreements at issue speak for themselves. In particular,

mPhase's obligation to register stock is governed by the Registration Agreement. Moreover, Fife wanted mPhase to file a Registration Statement in order to avoid a six month hold period— not to sell an unrestricted amount of mPhase's shares. (Second Fife Dec. (Ex. 1) ¶ 13.)

**DEFENDANT STATEMENT NO. 24:** Despite requiring mPhase [to] pay $7,500 to have Fife's counsel draft the relevant documents and to review and approve the Registration Statement before filing it with the SEC, neither Fife nor his counsel informed mPhase of the fact or the terms of the August 9, 2007 Consent Decree or of Fife's prior violations of the securities laws, which Fife later equated to the importance of a traffic ticket. (*See* Smiley Afdt. ¶ 28, **Exhibit "A"**; & Fife Deposition at 255:7-16, **Exhibit "K"**).

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife objects to Statement No. 24. It mischaracterizes the parties' written agreements, is conclusory, immaterial, prejudicial, lacks foundation, and is not supported by specific or admissible evidence. Fife incorporates herein his responses to Defendant's Statement Nos. 19 and 22. Moreover, Fife did not require mPhase to pay $7,500 to draft the relevant documents (an undefined term) and approve the Registration Statement. mPhase agreed "to pay $7,500.00 to the Buyer [Fife's predecessor] to cover the Buyer's legal fees, accounting costs, due diligence, monitoring and other transaction costs incurred in connection with the purchase and sale of the Securities." (Pl.'s Stmt. Fact, Ex. 2, ¶¶ 2(c), 4.) mPhase's characterization of this payment as a payment to Fife's counsel is incorrect, and so is mPhase's characterization that this payment was for Fife's counsel to approve the Registration Statement. The Registration Agreement very clearly required mPhase to prepare the Registration Statement and to do so without making any misrepresentation or omitting any material fact. (Registration Agreement (Ex. 3) § 3; *see also* Fife's response to

Defendant's Statement No. 19.)  mPhase even agreed to indemnify Fife for errors in the Registration Statement. (Registration Agreement (Ex. 3) § 6.)

Further, mPhase never actually provides any evidence (or even alleges) that Fife or his counsel reviewed the Registration Statement before it was filed or gave an opinion or suggestions to mPhase with respect to the Registration Statement.  Neither St George, Fife, nor their counsel actually reviewed the Registration Statement prior to mPhase filing it.  (Second Fife Dec. (Ex. 1) ¶ 14.)  In fact, St George suggested that mPhase hire an outside attorney to prepare the Registration Statement.  (Fife Depo. 151:15 – 152: 24, the relevant portions of which are attached hereto as Exhibit 4.)  Smiley insisted on doing it himself.  (*Id.*)  Smiley then erroneously stated in the Registration Statement that mPhase had entered into the September 13, 2011 note with Fife (not St George).  (*Id.*; *see also* Exhibit G to Defendant's Statement of Additional Facts.)  This led to St George's assignment of the September 13, 2011 note and related agreements to Fife.  (Fife Depo. (Ex. 4) 151:15 – 152: 24.)

**DEFENDANT STATEMENT NO. 25:**  Item 11 of a Form S-1 Registration Statement requires the registrant to disclosure [sic] whether any "control person" has been the subject of any judgment, decree or finding relating to the violation of any state or federal securities law during the five years prior to the filing. (Form S-1, Item 11, **Exhibit "H"** ¶ __ (incorporating the reporting requirements in Reg. S-K, 17 C.F.R. § 229.401.))

**PLAINTIFF'S RESPONSE:**  Disputed.  Defendant's Statement No. 25 is a statement of law.  It is not susceptible to a factual response.  Fife disputes mPhase's characterization of the law—as explained in more detail in Fife's supporting and reply memoranda.

**DEFENDANT STATEMENT NO. 26:** The Registration Statement, which mPhase filed on October 14, 2011 (at which time Fife held approximately 6% of mPhase's stock and was the

fourth largest shareholder), failed to disclose that Fife, as a "control person" of mPhase, was party to a Consent Decree/Judgment entered within the five years prior to the filing date. (Spreadsheet of Shareholder Holdings, **Exhibit "L"**; Smiley Afdt. ¶¶ 27-29, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife disputes and objects to Statement No. 26 because it is conclusory, immaterial, and premised on false legal conclusions, including that Fife is a control person or had some obligation to disclose a consent decree. Moreover, neither Smiley's affidavit nor the cited spreadsheet contain admissible evidence. First, Smiley does not set forth specific facts and figures, personal knowledge, or lay any foundation for his conclusions. Second, the spreadsheet is unauthenticated and incomprehensible, and mPhase has not provided any explanation, in Smiley's affidavit or otherwise, as to where the spreadsheet came from and how and who created it.

It appears that mPhase's conclusion that Fife owned 6% of mPhase's shares is not based on Fife's actual ownership, but rather on the hypothetical scenario under which Fife converted the entire outstanding balance of the note at issue into shares of mPhase's stock. This is an assumption—not a fact.

Finally, the Registration Statement, attached as Exhibit G to Smiley's affidavit, says it was filed on January 17, 2012—not October 14, 2011. It is also important to note that the Registration Statement does not list Fife as a control person.

**DEFENDANT STATEMENT NO. 27:** Unaware that the Registration Statement, and the Prospectus contained therein, were defective, the SEC declared the Statement effective on January 17, 2012, by which time Fife's beneficial ownership of mPhase stock had increased to approximately 10.5%. (Smiley Afdt. ¶ 29, **Exhibit "A"**; Spreadsheet of Shareholder Holdings, **Exhibit "L";** SEC Decl., **Exhibit "M".**)

**PLAINTIFF'S RESPONSE:** Fife does not dispute the Registration Statement was declared effective. Fife disputes and objects to the remainder of Statement No. 27 as a legal conclusion, conclusory, immaterial, and unsupported by admissible evidence. mPhase cites to an unauthenticated, incomprehensible spreadsheet without any explanation of where it came from and how and who created it. mPhase also cites to Smiley's affidavit, but Smiley does not authenticate the spreadsheet and has not been (and is) not qualified to testify to the SEC's knowledge, practices, and operations, he is not an expert in such matters, nor has Smiley set forth adequate foundation, specific facts, or personal knowledge to support his testimony and opinions on such matters and for his conclusion that Fife owned 10.5% of mPhase's shares.

It appears that mPhase's conclusion that Fife owned 10.5% of mPhase's shares is not based on Fife's actual ownership, but rather on a hypothetical scenario. mPhase's calculation, from what Fife can decipher from mPhase's spreadsheet, assumes Fife converted the entire outstanding balance of the note at issue into shares of mPhase's common stock. Under mPhase's hypothetical, if Fife had converted the entire balance, he would have owned 10.5% of mPhase's shares. This hypothetical, however, is based on faulty assumptions. First, the note's very terms restrict Fife from converting mPhases shares if doing so would provide Fife with more than 9.99% ownership of mPhase's common stock. (Pl.'s Stmt. Fact, Ex. 3, § 3(d).) mPhase's own Statement of Fact No. 20 recognizes as much. Second, Fife has never actually held more than 9.99% of mPhases's common stock shares, and—as stated—he never had a right to under any agreement. (Second Fife Dec. (Ex. 1) ¶ 16.)

**DEFENDANT STATEMENT NO. 28:** Fife then compounded the violation by failing to file within 10 days of acquiring beneficial ownership in excess of 10%, a required Form 13D,

which would have alerted mPhase (and the public) that he may be a "control person", requiring greater scrutiny under Item 11. (Smiley Afdt. ¶ 30, **Exhibit "A**.)

 **PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife's response to Defendant's Statement No. 27 is incorporated herein by this reference. Moreover, Defendant's Statement No. 28 is a legal conclusion and unsupported by admissible evidence. Further, mPhase cites to Smiley's affidavit, but Smiley is not an expert in such matters, nor has Smiley set forth adequate specific facts, foundation, or personal knowledge to support his testimony, conclusions, and opinions.

 **DEFENDANT STATEMENT NO. 29:** Fife executed his first sale under the 2011 Contract and Note on April 13, 2012, in which he converted $47,541.61 of the principal amount due under the 2011 Note into 50,422,919 shares of mPhase common stock, which he sold pursuant to the Prospectus that failed to contain the required disclosure of his prior Consent Decree. (Conversion Notice, April 3, 2012, **Exhibit "N"**.)

 **PLAINTIFF'S RESPONSE:** Disputed in part, but immaterial. Fife disputes the legal conclusion that he sold stock pursuant to a Prospectus that failed to contain required disclosures. In addition, mPhase has cited nothing in the record or otherwise to support such a conclusion.

 **DEFENDANT STATEMENT NO. 30:** At the time of the sale, Fife beneficially owned approximately 14.9% of mPhase's stock and was the second largest shareholder, including mPhase's officers and directors. (Spreadsheet of Shareholder Holdings, **Exhibit "L".)**

 **PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife's response to Defendant's Statement No. 27 is incorporated herein by this reference, including the discussion regarding the hypothetical method mPhase employs to calculate Fife's ownership of shares. Fife also objects to Statement No. 30 because it is conclusory, a legal conclusion, and lacks foundation. mPhase

has not cited any supporting admissible evidence, and instead has chosen to rely on an

unauthenticated, incomprehensible spreadsheet (without explaining what it is, where it came

from, and who and how it was created) to support this statement. As set forth in Fife's Second

Declaration, at no time has Fife actually held more than 9.99% of mPhases's common stock

shares, and he never had a right to under any agreement. (Second Fife Dec. (Ex. 1) ¶ 16.)

**DEFENDANT STATEMENT NO. 31:** In June 2012, Fife and mPhase agreed to a

Standstill Agreement, in which Fife promised not to convert or sell any of mPhase's stock until

October 1, 2012. As a creditor, Fife had acquired sufficient control over mPhase that he was

able to increase the principal of the Note from approximately $561,000 to $769,000 as

consideration for the Standstill. (Cplt. Exhibit 4 at 3.)

**PLAINTIFF'S RESPONSE:** Fife agrees that the parties entered into a Standstill

Agreement. That agreement is attached as Exhibit 6 to Fife's Statement of Undisputed Facts and

is incorporated herein by this reference. The Standstill Agreement speaks for itself. Fife

disputes the remainder of Defendant's Statement No. 31 because it is conclusory, lacks

foundation, is unsupported by admissible evidence, and is contradicted by the Standstill

Agreement, which states:

> 2. Standstill and Restructure. Subject to the terms, conditions and
> understandings contained in this Agreement, and provided [mPhase] is not in
> default of any provision hereunder or under the Note, [Fife] agrees that he will not
> seek to convert any portion of the Outstanding Balance of the Note, and that he
> will not sell any shares of Borrower's Common Stock during the Standstill Period
> (the "Standstill"). Thereafter, [Fife] further agrees that the Standstill shall
> continue for so long as [mPhase] is current on and has made all Note Payments
> (as defined below) required hereunder. Notwithstanding the foregoing, [Fife]'s
> Standstill obligations shall immediately and automatically terminate upon
> [mPhase's] failure to make any Note Payment when due or upon [mPhase]'s
> breach of any other term or provision of this Agreement or the Note.
>
> 3. Standstill Fee. As a material inducement and partial consideration
> for [Fife]'s agreement to enter into this Agreement, each of [mPhase] and [Fife]

acknowledges and agrees that the Outstanding Balance of this Note, as of immediately prior to the execution and delivery of this Agreement by the parties hereto, shall be increased by $57,612.52 (the "Standstill Effect") . . . . The Standstill Effect shall be fully earned and nonrefundable upon the execution and delivery of this Agreement by the parties. . . .

> 7. <u>Ratification of Note</u>. . . . The Outstanding Balance of the Note upon execution of this Agreement, including the Standstill Effect, shall be deemed and affirmed to be $777,769.08 . . . .

> 8. <u>Representations and Warranties of Borrower</u>. . . .

> (f) [mPhase] hereby acknowledges that it has freely and voluntarily entered into this Agreement after an adequate opportunity and sufficient period of time to review, analyze, and discuss (i) all terms and conditions of this Agreement, (ii) any and all other documents executed and delivered in connection with the transactions contemplated by this Agreement, and (iii) all factual and legal matters relevant to this Agreement and/or any and all such other documents, with counsel freely and independently selected by [mPhase] (or had the opportunity to be represented by counsel). [mPhase] further acknowledges and agrees that it has actively and with full understanding participated in the negotiation of this Agreement and all other documents executed and delivered in connection with this Agreement after consultation and review with its counsel (or had the opportunity to be represented by counsel), that all of the terms and conditions of this Agreement and the other documents executed and delivered in connection with this Agreement have been negotiated at arm's-length, and that this Agreement and all such other documents have been negotiated, prepared, and executed without fraud, duress, undue influence, or coercion of any kind or nature whatsoever having been exerted by or imposed upon any party by any other party.

(Pl.'s Stmt. Fact, Ex. 6, §§ 2,3,7-8.) During its deposition, mPhase (through its representative, Smiley) reaffirmed the representations and warranties made in the Standstill Agreement, including the representation that it was negotiated at arm's length without undue influence or coercion. (Pl.'s Stmt. Fact, Ex. 8, 45:15 – 46:7.) Noticeably, mPhase does not cite to Smiley's affidavit in support of statement 31. Merely presenting a conclusory and unsupported statement that Fife had control over mPhase does not make it true or create a material issue of fact. mPhase has an obligation to set forth specific, admissible facts demonstrating such control.

**DEFENDANT STATEMENT NO. 32:** On September 17, 2012, mPhase was first notified by the DTC that the chill was imposed, in part, as a result of Fife's deposits with the DTC of $491,309.52 worth of unregistered mPhase stock, which he had acquired under the 2010 Contract/Note. (DTC, Ltr., dated September 17, 2012, at Exhibit A to Ltr., **Exhibit "I"**).

**PLAINTIFF'S RESPONSE:** Fife does not dispute the date of the letter or that mPhase received the referenced letter. The letter speaks for itself. Fife objects to the remainder of Statement No. 32 because mPhase has not cited to any materials supporting the statements made (let alone admissible evidence) including the allegation that the stock was received "under the 2010 Contract/Note" and that this was the first time the DTC had notified mPhase of the cause of the chill. Noticeably, mPhase does not cite to Smiley's affidavit or other admissible evidence in support of these allegations. It is also important to note that the DTC Letter states the reasons for the imposition of the chill, (Pl.'s Stmt. Fact, Ex. 17, 80:2-5), but it does not list Fife's settlement with the SEC as one of those reasons. Instead, the chill was removed because mPhase demonstrated to the DTC that the shares it issued were freely tradeable. (Pl.'s Stmt. Fact, Ex. 17, 79:10-16.)

**DEFENDANT STATEMENT NO. 33:** In addition, in deciding whether to impose a chill, where there is no registration statement associated with a large deposit of a company's stock, it is the DTC's standard practice to examine whether the depositor of the unregistered stock has a prior history of securities violations. (Desantis Dep. at 38:13-40:14, 45:2-13, 48:9-21, 49:4-12 54:8-55:12, 58:6-60:22, **Exhibit "O"**)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Ms. Desantis's deposition testimony does not support Defendant's Statement No. 33. mPhase's selective citations to the DTCC Deposition transcript are numerous but do not establish that the DTCC has any standard

practice with regard to consent decrees or similar documents.  Rather, the selectively cited

portions of the DTC transcript (and the DTC's deposition in general) establish that there are

numerous considerations that the DTC may or may not consider in any given case, and those

considerations are by no means uniform.  (*See, e.g.,* Pl.'s Stmt. Fact, Ex. 17, 29:20-23; *see also*

*id.*, 51:2-52:4, 54:4-55:12, 60:12-22).)

Moreover, the DTCC's standard practice is not to determine if a depositor of unregistered

shares has a prior history of securities violations.  (Pl.'s Stmt. Fact, Ex. 17, 29:20-23 (


REDACTED


); *id.*, 43:23-44)  But even if the DTCC had learned of

Fife's settlement with the SEC, that settlement would only have mattered to their decision to

impose a chill if it related to receiving unregistered shares, (Pl.'s Stmt. Fact, Ex. 17, 48:16-18;

51:2-52:4; 54:4-55:12), and Fife's settlement with the SEC is not related to receiving

unregistered shares, and mPhase does not even argue it does.  (*See* Final Judgment (Ex. 2.); *see*

*also generally* Cmplt., SEC v. Fife, Case No. 07-0347 (N.D. Ill.).)  And Fife's settlement with

the SEC was not a finding of any "securities violations"—it explicitly says it is the result of a

settlement without an admission of guilt.  (Final Judgment (Ex. 2), at 1.)

**DEFENDANT STATEMENT NO. 34:**  In early October 2012, mPhase was advised by

its outside counsel that it would be almost impossible for the DTC to remove the chill if mPhase

permitted any stock conversions and/or sales to the public by any person whose name appeared

in the DTC Letter of September 17, 2011 (such as Fife), prior to the removal of the chill. (Smiley

Afdt. ¶ 31, **Exhibit "A"**; & DTC Ltr., dated September 17, 2012 at Exhibit A to Letter, **Exhibit**

**"I"**.)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Mr. Fife objects to Statement No. 34 because is inadmissible hearsay, conclusory, opinion, speculation, lacks foundation, and is not supported by admissible evidence. mPhase cites to Martin Smiley's affidavit, but Smiley has not been (and is) not qualified to testify to the DTC's knowledge, practices, and operations, he is not an expert in such matters, nor has Smiley set forth adequate specific facts, foundation, or personal knowledge to support his testimony and opinions on such matters. Further, Smiley is quoting an unknown attorneys' hearsay opinion for the truth of the matter asserted therein.

**DEFENDANT STATEMENT NO. 35:** After this telephone conference, mPhase notified Fife that it could not allow Fife to convert any additional mPhase stock until the chill was lifted. (Smiley Afdt. ¶ 32, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Fife disputes the existence and content of the telephone conference for the reasons discussed above in response to Defendant's Statement No. 34. Fife does not dispute mPhase told Mr. Fife, via email, it would not convert mPhase stock, but only after Fife sent him a conversion notice on October 24, 2012. (Pl.'s Stmt. Fact, Ex. 8, 46:17-23 and Exhibit 6 thereto, attached hereto as Exhibit 5.)

**DEFENDANT STATEMENT NO. 36:** Nevertheless, Fife attempted to force a conversion of mPhase stock on October 24, 2012, which resulted in the instant litigation, at which time he beneficially owned 16.4% of mPhase's stock. (Cplt. ¶ 15, ECF 1; Spreadsheet of Shareholder Holdings, **Exhibit "L"**.)

**PLAINTIFF'S RESPONSE:** Disputed in part, but immaterial. Fife incorporates his response to Defendant's Statement Nos. 27, 34, and 35 herein, including the discussion regarding the hypothetical method mPhase employs to calculate Fife's ownership of shares. Moreover, Statement No. 36 is not supported by any admissible evidence. mPhase cites to an

unauthenticated, incomprehensible spreadsheet without so much as identifying where it came

from and who and how it was created—let alone how it supports Defendant's Statement No. 36.

Noticeably, mPhase does not cite to Smiley's or any other affidavit.  As set forth in Fife's

Second Affidavit, at no time has Fife actually held more than 9.99% of mPhases's common stock

shares, and he never had a right to under any agreement.  (Second Fife Dec. (Ex. 1) ¶ 16.)

**DEFENDANT STATEMENT NO. 37:**  After Fife filed this lawsuit, mPhase first

learned in discovery about Fife's Consent Decree that he had concealed from mPhase for the

four years of their relationship. (Smiley Afdt. ¶ 33, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE**:  Disputed, but immaterial.  Smiley, on behalf of mPhase,

previously testified that he learned of Fife's consent decree in a telephone conversation with the

DTC held prior to October 24, 2012.  (Pl.'s Stmt. Fact, Ex. 8, 51:4-14.)  This lawsuit was

commenced on December 4, 2012.

Fife objects to Statement No. 37 because it is conclusory, speculative, lacks foundation,

and is not based on personal knowledge.  Moreover, there is no evidence of any concealment.

mPhase and Smiley's affidavit have not set forth any specific facts, foundation, or personal

knowledge in support of its allegation that Fife concealed his settlement with the SEC.  No

reasonable finder of fact could conclude that Fife concealed his settlement with the SEC.  As

Fife noted in its Memorandum in Support of Summary Judgment,

> the first three results of a simple Google search for 'John Fife
> SEC' lead to SEC announcements regarding the John Fife and
> Clarion Management Matter—the matter under which the Consent
> Decree was entered.  *See*
> https://www.google.com/search?q=john+fife+sec&ie=utf-
> 8&oe=utf-8&aq=t&rls=org.mozilla:en-US:official&client=firefox-
> a&channel=fflb (*last visited* June 26, 2014).  These search results
> are a fact this Court can take judicial notice of.  *See, e.g., Conrad
> v. AM Cmty. Credit Union*, 750 F.3d 634, 636 (7th Cir. 2014)
> (court uses a Google search to confirm that banana costumes are "a

common consumer product"); *United States v. Bari*, 599 F. 3d 176, 177 (2d Cir., 2010) (upholding trial court's use of a Google search "to confirm that 'there are also lots of different rain hats . . . that one could buy'"). It is inconceivable that Fife somehow prevailed upon or coerced mPhase into ignoring even the most basic of internet background searches.

(Mem. Supp. of Mot. Sum. J. (Dckt. No. 118) at 8 n.3.) Moreover, the third result of a Google

search for "John M. Fife" leads to SEC announcements regarding the John Fife and Clarion

Management Matter—the matter under which the Consent Decree was entered. *See*

https://www.google.com/webhp?sourceid=chrome-

instant&rlz=1C1LENP_enUS524US524&ion=1&espv=2&ie=UTF-8#q=John%20M.%20fife.

**DEFENDANT STATEMENT NO. 38:** mPhase was able to have the chill lifted on

October 3, 2013; however, during the period of the chill (June 17, 2011, to October 3, 2013),

investors could not clear trades of mPhase's stock electronically, severely restricting mPhase's

ability to liquidate payments due under the 2011 Contract and Note through cash payments - and

depressing the price of its stock. (Smiley Afdt. ¶ 34, **Exhibit "A";** DTC Ltr., dated September

17, 2013, **Exhibit "J"**.)

**PLAINTIFF'S RESPONSE:** Fife does not dispute the chill was lifted. The chill was

removed once mPhase established that the shares it issued were freely tradeable. (Pl.'s Stmt.

Fact, Ex. 17, 79:10-16.) Fife disputes and objects to the remainder of Defendant's Statement No.

38. It is conclusory, speculative, improper opinion, and is not supported by admissible evidence

or specific facts. mPhase cites to Martin Smiley's affidavit, but Smiley has not been (and is) not

qualified to testify to the impacts of a DTCC chill (economic or otherwise), he is not an expert in

such matters, nor has Smiley set forth adequate foundation to support his testimony and opinions

on such matters. The adverse economic consequences mPhase asserts could have been caused

by any number of factors that require expert evaluation. mPhase is attempting to shoehorn

Smiley in as an economic expert. The Court previously excluded mPhase's expert's opinions on these very same matters. (Memorandum Opinion and Order (Dckt. No. 116) at 5-6.) Before the Court excluded mPhase's expert opinions on these matters, Fife retained an expert, Clarke Nelson, to respond to mPhase's excluded expert's opinion. Mr. Nelson listed a number of factors in his expert report, which is incorporated herein, that may have resulted in negative economic consequences to mPhase that must be considered to determine mPhase's damages and the cause of those damages. (Mem. Supp. of Mot. Sum. J., Ex. A (Dckt. No. 118-1), at 9-15.) Smiley's Affidavit does not address any of these factors, lay any foundation in support of his opinion, set forth specific facts, or demonstrate Smiley's personal knowledge, expertise, or basis for his conclusions.

**DEFENDANT STATEMENT NO. 39:** The lack of access to the capital markets caused by Fife's deposit of a large number of unregistered mPhase stock, his failure to disclose his 2007 Consent Decree and the significant threat that the DTC would make the chill permanent in the event of any conversions by Fife, made it impossible for mPhase to perform on its 2011 Contract or Note through repayments in cash. (Smiley Afdt. ¶ 35, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Disputed. Fife incorporates all of his responses above herein. Defendant's Statement No. 39 is objectionable because it is conclusory, speculative, improper opinion, argument, and a legal conclusion. Defendant's Statement No. 39 is little more than legal argument styled as a statement of fact. Mr. Fife has addressed these legal arguments in its memorandum in support of its motion for summary judgment and in its reply brief.

**DEFENDANT STATEMENT NO. 40:** Had mPhase been aware of Fife's 2007 Consent Decree, it would never have entered into any of the three Contracts or Convertible Notes with Fife. (Smiley Afdt. ¶ 36, **Exhibit "A".**)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. This is a conclusory, speculative statement that lacks foundation. Smiley's affidavit does not set forth a single specific fact in support of this conclusion, nor does it demonstrate any foundation or personal knowledge.

**DEFENDANT STATEMENT NO. 41:** mPhase is not subject to the reporting requirements under Sections 13(a) or 15(d) of the Act. (Smiley Afdt. ¶ 37, **Exhibit "A"**.)

**PLAINTIFF'S RESPONSE:** Disputed, but immaterial. Mr. Fife objects to Defendant's Statement No. 41 because it is a legal conclusion and there is no foundation to support this statement.

**DEFENDANT STATEMENT NO. 42:** Prior to the DTC-imposed chill, mPhase was able to issue its notes by offering an average discount from the market price of 20%; after the chill, lenders demanded a discount of 40%, an incremental increase in the discount of 20% (*i.e.*, 40%-20%). mPhase's lenders converted 344,961,373 shares of mPhase stock at the 40% discount with a total market value of $364,638, which when subjected to the increased 20% discount resulted in damages of $72,928 (*i.e.*, $364,638 x 20%). (Smiley Afdt. ¶ 38, **Exhibit "A"**; Defendant Damages Spreadsheets, **Exhibit "P"**.)

**PLAINTIFF'S RESPONSE:** Disputed. Mr. Fife objects to Statement No. 42 because it improper opinion, is conclusory, lacks foundation, and is unsupported by specific admissible evidence. Moreover, mPhase cites to Smiley's affidavit, but Smiley has not been (and is) not qualified to testify to the impacts of a DTC chill (economic or otherwise), he is not an expert in such matters, nor has Smiley set forth adequate foundation or personal knowledge to support his testimony and opinions on such matters. mPhase is attempting to shoehorn Smiley in as an

economic expert.  The Court previously excluded mPhase's expert's opinions on these same

matters.  (Memorandum Opinion and Order (Dckt. 116), at 5-6.)

mPhase's excluded expert opined that "[t]he 'chill' of Defendant's common stock by the

DTCC increased Defendant's cost of financing."  Before the Court excluded mPhase's expert,

Fife retained a rebuttal expert, Clarke Nelson.  Mr. Nelson concluded that in order to evaluate the

cost of financing a number of factors need to be considered. (Mem. Supp. of Mot. Sum. J., Ex. A

(Dckt. No. 118-1), at 9-15.)  Smiley has not addressed any of the factors set forth in Mr.

Nelson's report, nor has he set forth sufficient qualifications, foundation, or personal knowledge

necessary to render the opinions and calculations set forth in Defendant's Statement No. 42.

Further, the cost of financing damage theory is not consistent with mPhase's explanation

of its damages in its discovery responses and during its deposition.  (Def.'s Suppl. Resp. to Pl.'s

Interrog. No. 18 ("mPhase states that it suffered a loss of market capitalization . . . due to the

DTC Chill"), attached hereto as Exhibit 6; Pl.'s Stmt. Fact, Ex. 8, 68:21 – 69:13.)  mPhase is

now, after the close of fact discovery, seeking to amend its damages theory in response to Fife's

summary judgment motion.  Fife will be prejudiced if mPhase is allowed to present a damages

theory that Fife was unable to conduct discovery on this theory.

Finally, mPhase has not provided any specific facts and foundational evidence to support

its calculations conclusions.  For example, the transactions, lenders, and proposed transactions

are not identified from which mPhase and Smiley's affidavit arrive at the conclusions set forth in

Statement No. 42.

**DEFENDANT STATEMENT NO. 43**:  While Plaintiff's damage calculation is based

on the assumption that the Standstill Fee of $57,612.52 was owing as of the execution date of the

Standstill Agreement, Defendant understood that this fee was to be earned only if Plaintiff

29

refrained from converting and/or selling Defendant's stock until October 1, 2012. Moreover, it

was Defendant's understanding that the interest rate on the 2011 Note was an annual rate of 8%.

Defendant disputes that a penalty rate was property triggered. In addition, Plaintiff has included a

$125,000 charge in his damage calculation. It was Defendant's understanding that this amount

was only owing if Defendant decided to pay off the balance in cash, rather than stock. Since

Plaintiff had indicated an intent to convert amounts due under the 2011 Note into stock,

Defendant disputes the inclusion of this amount in the damage calculation. (Smiley Afdt. ¶ 39,

**Exhibit "A"**.)

      **PLAINTIFF'S RESPONSE:** Disputed. Statement No. 43 is comprised of legal

conclusions, and improper opinion. What Defendant understood the Loan Documents to mean is

immaterial, as the meaning of the Loan Documents can be discerned from their plain language as

a matter of law by this Court. *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (Ill. App. Ct.

2002 ("The interpretation of a contract is a question of law and therefore may properly be

decided on a motion for summary judgment.) Additionally, statement 43 is contradicted by the

plain language of the agreements and the undisputed evidence on record.

      First, in the Standstill Agreement, the parties agreed that the Standstill Fee would be

added to the Outstanding Balance of the Note "as of immediately prior to the execution and

delivery of the [Standstill] Agreement," that this fee was "a material inducement and partial

consideration for Lender's agreement to enter into this [Standstill] Agreement," and that the fee

"shall be fully earned and nonrefundable upon the execution and delivery of this [Standstill]

Agreement by the parties." (Pl.'s Stmt. Fact, Ex. 6, § 3.) Second, the Note provides that the

money due under the Note "shall accrue at the rate of eight percent (8%) per annum, provided

that upon the occurrence and during the continuance of an Event of Default, Interest shall accrue

on the Outstanding Balance at the rate of eighteen percent (18%) per annum." As established in

the affidavit of Tina Saxton and further explained in Fife's supporting memorandum and reply,

mPhase was in default under the Note as of October 27, 2011 (eight months prior to the

Standstill Agreement). (Pl.'s Stmt. Fact, Ex. 5, ¶¶ 12-13.) Finally, Fife's damages are based on

only two numbers: $777,769.08 (the amount mPhase agreed was due under the Note at the time

it executed the Standstill Agreement), (Pl.'s Stmt. Fact, Ex. 6, § 7.), plus the interest accruing on

that amount at the default rate, as provided for in the Note and Standstill Agreement. If the

amount mPhase agreed was due under the Standstill Agreement contained a $125,000 charge,

mPhase waived any objection to that charge when it negotiated and agreed that the correct

Outstanding Balance of the Note was $777,769.08.

JOHN FIFE


_/s/ Brigman L. Harman_____
By: Brigman L. Harman, one of his
Attorneys


Jeremy C. Reutzel (pro hac vice)          Scott L. Warner (06231380)
Brigman L. Harman (pro hac vice)          Ellen F. Wetmore (06304273)
Bennett Tueller Johnson & Deere           Franczek Radelet P.C.
3165 East Millrock Drive, Suite 500       300 S. Wacker Dr., Suite 3400
Salt Lake City, Utah 84121-5027           Chicago, Illinois 60606
Telephone: (801) 438-2000                 Telephone: (312) 986-0300
Email: jreutzel@btjd.com                  Email: slw@franczek.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that he served the foregoing on the following attorneys

of record via the Court's CM/ECF system on this 29 day of August 2014:

| | |
|---|---|
| Richard Roth | Daniel J. Voelker, Esq. |
| The Roth Law Firm PLLC | Voelker Litigation Group |
| 295 Madison Avenue, Floor 22 | 311 W. Superior Street, Suite 500 |
| New York, NY 10017 | Chicago, Illinois 60654 |
| Rich@rrothlaw.com | dvoelker@voelkerlitigationgroup.com |

By: _____ /s/ Brigman L. Harman _____